# EXHIBIT B

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF CALIFORNIA

KENNETH MOSER

Plaintiff,

vs.

MEDGUARD ALERT, INC, a
Connecticut Corporation, Lifewatch
Inc., a New York Corporation, also
d/b/a Lifewatch USA and Medical
ALARM SYSTEMS and LIFEWATCH
MOTO, EVAN SIRLIN, individually
and as an officer or manager of
Lifewatch, Inc., and DAVID ROMAN,
individually and as an officer or
manager of Lifewatch Inc., and
MedGuard Alert, Inc.

Defendants.

Case No.: 19-cv-831

**DEFENDANT DAVID ROMAN'S
DECLARATION IN SUPPORT OF
HIS MOTION TO DISMISS**

I, David Roman, of full age and being duly sworn, say:

1.      I am an officer of MedGuard Alert, Inc., a Connecticut corporation
with its principal place of business in Connecticut.

2.      I am also an officer of Lifewatch, Inc. a New York corporation with
its principal place of business in Connecticut.

3.      I perform my job duties exclusively from Connecticut, not California.

4.      I understand that I have been sued in my individual capacity.  As set
forth below, I do not have personal contacts with California.

5.      I have been a Connecticut resident for over 36 years.

6.      I have never resided in California.

7.      I do not maintain an office in California.

8.      I do not hold title to real property in California.

9.      I do not maintain bank accounts or other financial accounts in
California.

10. I do not pay individual taxes in California.

11. I do not have telephone listings in California.

12. I do not personally have agents, servants or employees in California.

13. I do not personally maintain a post office box or other mailing address in California.

14. I deny each of Plaintiff's allegations against me. I deny that I ratified, approved, joined in, acquiesced to and/or authorized the alleged wrongful acts, or that I had actual or constructive knowledge of the alleged wrongful acts. I further deny that I aided, abetted, encouraged, conspired in, engaged in, planned and/or rendered substantial assistance to other Defendants in committing the alleged wrongful acts.

15. I did not make the allegedly violative telephone calls. Nor did I cause allegedly violative telephone calls to be made.

16. I do not know the Plaintiff in this lawsuit.

17. On or about September 30, 2019, an individual who appeared to be a process server handed me the attached Summons and Complaint while I was in my Middletown, Connecticut office. (Exhibit 1).

18. I have personal knowledge of the foregoing. The facts set forth herein are true and accurate upon information and belief, and I make this declaration under penalty of perjury, under the laws of the State of California and pursuant to 28 U.S.C. section 1746(2).

DATED: October 18, 2019

David Roman

Sworn and Subscribed to me
on this 18th day of October, 2019

Joseph Lipari
NOTARY Public - Attorney at Law
NY, NJ, Pa
0318 2 2002

# EXHIBIT 1

O 441    Summons in a Civil Action

# United States District Court

## SOUTHERN DISTRICT OF CALIFORNIA

Kenneth Moser

Served
9/3/15

Civil Action No. 19-cv-831-MMA-BLM

v.

*Plaintiff*

See Attachment

*Defendant*

### SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) - or 60 days if you are the United States or a United States agency, or an office or employee of the United States described in Fed. R. Civ. P. 12(a)(2) or (3) - You must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Kenneth J. Moser
11280 Spica Drive
San Diego, CA 92126
858-627-4190

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Date:        5/3/19

John Morrill
*CLERK OF COURT*
S/
                    A. Smith
        *Signature of Clerk or Deputy Clerk*

O 441   Summons in a Civil Action

(Page 2)

Civil Action No. 19-cv-831-MMA-BLM

Date Issued: _____5/3/19_____

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4(1))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or place of abode with *(name)* _____

_____, a person of suitable age and discretion who resides there,

on *(date)* _____, and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of the individual)* _____, who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify)*:


My fees are $ _____ for travel and $ _____ for services, for a total of $ _____.

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                                            *Server's Signature*

                                                            _____
                                                            *Printed name and title*

                                                            _____
                                                            *Server's address*

### NOTICE OF RIGHT TO CONSENT TO TRIAL BY A UNITED STATES MAGISTRATE JUDGE

IN ACCORDANCE WITH THE PROVISION OF 28 USC 636(C) YOU ARE HEREBY NOTIFIED THAT A U.S. MAGISTRATE JUDGE OF THIS DISTRICT MAY, UPON CONSENT OF ALL PARTIES, CONDUCT ANY OR ALL PROCEEDINGS, INCLUDING A JURY OR NON-JURY TRIAL, AND ORDER THE ENTRY OF A FINAL JUDGMENT.

YOU SHOULD BE AWARE THAT YOUR DECISION TO CONSENT OR NOT CONSENT IS ENTIRELY VOLUNTARY AND SHOUL BE COMMUNICATED SOLELY TO THE CLERK OF COURT.  ONLY IF ALL PARTIES CONSENT WILL THE JUDGE OR MAGISTRATE JUDGE WHOM THE CASE HAS BEEN ASSIGNED BE INFORMED OF YOUR DECISION.

JUDGMENTS OF THE U.S. MAGISTRATE JUDGES ARE APPEALABLE TO THE U.S. COURT OF APPEALS IN ACCORDANCE WITH THIS STATUTE AND THE FEDERAL RULES OF APPELLATE PROCEDURE.

O 441   Summons in a Civil Action

(Page 3)

# United States District Court
## SOUTHERN DISTRICT OF CALIFORNIA

## (ATTACHMENT)

Civil Action No. 19-cv-831-MMA-BLM

Medguard Alert, Inc., a Connecticut corporation; Lifewatch Inc., a New York corporation, also d/b/a Lifewatch USA and Medical Alarm Systems and Lifewatch Moto; Evan Sirlin, individually and as an officer or manager of Lifewatch Inc.; and David Roman, individually and as an officer or manager of Lifewatch Inc., Medguard Alert, Inc.

JS 44 (Rev. 06/17) Case 3:19-cv-00831-WQH-BLM Document 1-1 Filed 05/03/19 PageID.65 Page 1 FILED

**CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

May 03 2019

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY  s/ alshahs  DEPUTY

## I. (a) PLAINTIFFS

Kenneth J. Moser

**(b)** County of Residence of First Listed Plaintiff  San Diego
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

11280 Spica Drive
San Diego, CA 92126  858-627-4190

## DEFENDANTS

Medguard Alert, INC et al

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

'19CV831  MMABLM

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**

☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**

☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury - Medical Malpractice

**CIVIL RIGHTS**

☐ 440 Other Civil Rights
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 448 Education

PERSONAL INJURY
☐ 365 Personal Injury - Product Liability
☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**PRISONER PETITIONS**

Habeas Corpus:
☐ 463 Alien Detainee
☐ 510 Motions to Vacate Sentence
☐ 530 General
☐ 535 Death Penalty
Other:
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition
☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**

☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 690 Other

**LABOR**

☐ 710 Fair Labor Standards Act
☐ 720 Labor/Management Relations
☐ 740 Railway Labor Act
☐ 751 Family and Medical Leave Act
☐ 790 Other Labor Litigation
☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**

☒ 462 Naturalization Application
☐ 465 Other Immigration Actions

**BANKRUPTCY**

☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**

☐ 820 Copyrights
☐ 830 Patent
☐ 835 Patent - Abbreviated New Drug Application
☐ 840 Trademark

**SOCIAL SECURITY**

☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**

☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**

☐ 375 False Claims Act
☐ 376 Qui Tam (31 USC 3729(a))
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 850 Securities/Commodities/ Exchange
☒ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 895 Freedom of Information Act
☐ 896 Arbitration
☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
47 USC 227

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE  5/3/19

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

May 03 2019

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY            s/ alshahs            DEPUTY

KENNETH J. MOSER
11280 Spica Drive
San Diego, CA 92126
Telephone: (858) 627-4190
Email: kmoser1@san.rr.com

Plaintiff *Pro Se*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH J. MOSER, | ) Case No. '19CV831  MMABLM |
| Plaintiff. | ) |
| | ) **COMPLAINT FOR DAMAGES,** |
| v. | ) **INCLUDING PUNITIVE** |
| | ) **DAMAGES, INTEREST AND** |
| MEDGUARD ALERT, INC., a | ) **FOR INJUNCTIVE RELIEF** |
| Connecticut corporation, LIFEWATCH | ) |
| INC., a New York corporation, also d/b/a | ) **Violation(s) of Telephone** |
| LIFEWATCH USA and MEDICAL | ) **Consumer Protection Act of 1991** |
| ALARM SYSTEMS and LIFEWATCH | ) **Trespass to Chattel** |
| MOTO, EVAN SIRLIN, individually and | ) **Unfair Business Practices** |
| as an officer or manager of Lifewatch Inc., | ) |
| and DAVID ROMAN, individually and as | ) |
| an officer or manager of Lifewatch Inc., | ) |
| and Medguard Alert, Inc. | ) |
| | ) |
| Defendants. | ) |
| | ) |

COMES NOW Plaintiff KENNETH J. MOSER (hereinafter referred to as "Plaintiff") who

alleges as follows:

## JURISDICTIONAL ALLEGATIONS

1.  Plaintiff is, and at all times herein mentioned was, a resident of the County of

KENNETH J. MOSER
11280 Spica Drive
San Diego, CA 92126
Telephone: (858) 627-4190
Email: kmoser1@san.rr.com

Plaintiff *Pro Se*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH J. MOSER, | ) Case No. _____ |
| Plaintiff. | ) |
| v. | ) **COMPLAINT FOR DAMAGES,** |
| | ) **INCLUDING PUNITIVE** |
| MEDGUARD ALERT, INC., a | ) **DAMAGES, INTEREST AND** |
| Connecticut corporation, LIFEWATCH | ) **FOR INJUNCTIVE RELIEF** |
| INC., a New York corporation, also d/b/a | ) |
| LIFEWATCH USA and MEDICAL | ) **Violation(s) of Telephone** |
| ALARM SYSTEMS and LIFEWATCH | ) **Consumer Protection Act of 1991** |
| MOTO, EVAN SIRLIN, individually and | ) **Trespass to Chattel** |
| as an officer or manager of Lifewatch Inc., | ) **Unfair Business Practices** |
| and DAVID ROMAN, individually and as | ) |
| an officer or manager of Lifewatch Inc., | ) |
| and Medguard Alert, Inc. | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

COMES NOW Plaintiff KENNETH J. MOSER (hereinafter referred to as "Plaintiff") who alleges as follows:

## JURISDICTIONAL ALLEGATIONS

1.  Plaintiff is, and at all times herein mentioned was, a resident of the County of

San Diego.

2.      Defendant LIFEWATCH INC., a New York corporation, also d/b/a LIFEWATCH USA and MEDICAL ALARM SYSTEMS transacts or has transacted business in this district and throughout the United States.

3.      Defendant MEDGUARD ALERT, INC., is a Connecticut corporation with its principal place of business at 55 Sebethe Drive, Cromwell, Connecticut 06416.  Medguard transacts or has transacted business in this district and throughout the United States.

4.      Defendant EVAN SIRLIN, ("Sirlin") is the President of Lifewatch.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Sirlin, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

5.      Defendant DAVID ROMAN ("Roman") is a Vice-President and Chairman of Lifewatch, and President, CEO, and Treasurer of Medguard.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Roman, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

6.      This case is filed pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 et. seq. ("TCPA").  The U.S. Supreme Court recently decided that federals courts have federal question subject matter jurisdiction over such civil actions under 28 U.S.C. §§ 1331 and 1441.  Mims v. Arrow Fin. Services, LLC, -- U.S. --, 132 S.Ct. 740, 753 (2012).  The state law claim herein arises out of a common nucleus of operative facts and is subject to supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

7.      The Ninth Circuit Court of Appeals recently ruled that TCPA cases have federal standing by their very nature.  Van Patten v. Vertical Fitness Group, LLC, 847 F.3d 1037, 1043 (9th Cir. 2017) ("Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients.").

Case 3:19-cv-00831-WQH-BLM   Document 1   Filed 05/03/19   PageID.4   Page 4 of 64

8.     At all times herein mentioned each defendant was the partner, agent and employee of each co-defendant herein and was at all times acting within the scope of such partnership, agency and employment and each defendant ratified the conduct of each co-defendant herein.

## FACTUAL SUMMARY

9.     Defendants transmitted four (43) total robo calls (ROBO) to KENNETH J. MOSER's cellular telephone number 858-627-4190 using an automatic dialer from 11/14/14 to 5/15/18.

10.    While each of the calls complained of above transmitted a proper Caller ID number, they did not give the true and accurate name of the person or entity calling in the Caller ID name information as required by law.  47 C.F.R. § 64.1601(e).  When Plaintiff called these numbers back he found them to be disconnected.

11.    All of the calls used an Automatic Dialer that played a pre-recorded or Robo message with required user input to proceed to a live operator EG:

"Hi this is an important message from the Life Alert System.  You have been selected to receive a free life alert system with free equipment use, free shipping and free warranty.  This Life Alert System can protect your family from medical emergencies, to fire emergencies, to gas emergencies, to intrusion emergencies.  Press 1 now to speak to our service department." November – December 2014

And

"Hello seniors, due to new health care regulations.  You are now eligible to receive a personal medical alert system at no cost to you!  Since you've already have been referred to by a friend or family member, we have the system waiting to be shipped out to you.  Press one now to receive your personal medical alert system and by taking advantage today you will also receive $1,000 in grocery saving coupons.  Plus a 75% prescription discount card.  Press one now to receive your personal medical alert system." January – July 2015

Case 3:19-cv-00831-WQH-BLM   Document 1   Filed 05/03/19   PageID.5   Page 5 of 64

12. The initial calls Plaintiff received with using the first message, gave the false impression that they came from Life Alert System, a leading competitor of Lifewatch and Medguard, that advertises heavily on TV. This was in direct violation of a restraining order obtained in Life Alert Emergency Response, Inc. v. Lifewatch, Inc. CV13-03455 JAK (SSx) issued on 5/13/2014, requiring Lifewatch to stop using Life Alert's trademarked name, which is attached hereto as Exhibit 1 and incorporated herein as if set forth verbatim.

13. Plaintiff took copious notes and recorded many of the calls as detailed here:

| File | Date/Time | Type | Size |
|---|---|---|---|
| Life Alert 111414 1153am hangup on transfer.wma | 11/14/2014 11:54 AM | Windows Media Audio file | 944 KB |
| Life Alert 112514 945am same message as before - have you on file to be deleted.wma | 11/25/2014 9:48 AM | Windows Media Audio file | 957 KB |
| Life Alert 120914 1031am Hello Seniors where I purchased.wma | 12/9/2014 11:09 AM | Windows Media Audio file | 25,187 KB |
| callback for verity.wma | 12/9/2014 2:25 PM | Windows Media Audio file | 952 KB |
| callback to verify shipping.wma | 12/10/2014 9:13 AM | Windows Media Audio file | 2,535 KB |
| Call to cancel.wma | 12/15/2014 1:39 PM | Windows Media Audio file | 887 KB |
| 121514 Elkridge MD 4109856570.wma | 12/15/2014 2:10 PM | Windows Media Audio file | 1,281 KB |
| 121914 Elkridge MD 4109856570.wma | 12/19/2014 2:10 PM | Windows Media Audio file | 4,754 KB |
| 122914 153pm Elkridge MD 4109856570.wma | 12/23/2014 1:54 PM | Windows Media Audio file | 492 KB |
| Life Alert 122714 110pm CID Cell Phone OK 2196548687 Hello Seniors.wma | 12/27/2014 11:13 AM | Windows Media Audio file | 486 KB |
| Life Alert 122914 1248pm CID Cell Phone IN 2196548687 Hello Seniors.wma | 12/29/2014 12:49 PM | Windows Media Audio file | 602 KB |
| 011915 1231pm. CID Cell Phone OK 9185705402 Hello Seniors - dropped after pushed 1.wma | 1/19/2015 12:34 PM | Windows Media Audio file | 593 KB |
| 012015 1231pm CID Cell Phone OK 9185705402 Hello Seniors.drop.wma | 1/19/2015 12:34 PM | Windows Media Audio file | 593 KB |
| 012715 CID Teddy Clayton 8704636589 Hello seniors - dropped after 1.wma | 1/21/2015 11:42 AM | Windows Media Audio file | 323 KB |
| 012815 1222pm CID North Adams 4136628519.wma | 1/27/2015 11:05 AM | Windows Media Audio file | 597 KB |
| 020315 439pm CID 112196548687 Hello seniors - dropped.wma | 1/28/2015 12:22 PM | Windows Media Audio file | 934 KB |
| 021715 115pm CID Hayes VA 8046428078 Hello seniors - dropped after 1 push.wma | 2/3/2015 4:41 PM | Windows Media Audio file | 457 KB |
| 021915 1145pm CID Hayes VA 8046428078 no one home.wma | 2/17/2015 1:18 PM | Windows Media Audio file | 510 KB |
| 022715 439pm CID North Adams MA 4136628519 - dropped.wma | 2/19/2015 11:47 AM | Windows Media Audio file | 203 KB |
| 032315 CID North Adams MA 4136628519 Hello seniors - dropped after 1 push.wma | 2/27/2015 11:09 AM | Windows Media Audio file | 382 KB |
| 032315 1024 CID Lake Station DR 2196548687 Hello seniors - dropped after 1 push.wma | 3/23/2015 10:06 AM | Windows Media Audio file | -251 KB |
| 041415 CID Richard F Brown 3042635785 - dropped after 1 push.wma | 3/23/2015 10:26 AM | Windows Media Audio file | 216 KB |
| 041515 144pm CID Rosey City Tx 4698749866 Hello seniors - dropped after 1 push.wma | 4/14/2015 1:07 PM | Windows Media Audio file | 448 KB |
| 042215 CID Rensselaer IN 950am - dropped after 1 push.wma | 4/15/2015 1:47 PM | Windows Media Audio file | 396 KB |
| 042315 CID Rensselaer IN 2192067805 236pm - dropped after 1 push.wma | 4/22/2015 9:52 AM | Windows Media Audio file | 181 KB |
| 042415 CID Rensselaer IN 2192067805 944am - no one there hangup.wma | 4/23/2015 2:37 PM | Windows Media Audio file | 203 KB |
| 050415 CID Richard F Brown 3042635785 1026am - Hello Seniors -hangup.wma | 4/24/2015 9:45 AM | Windows Media Audio file | 325 KB |
| 050615 CID Richard F Brown 3042635785 1131am - hangup.wma | 5/4/2015 10:30 AM | Windows Media Audio file | 505 KB |
| 060915 Hello Seniors CID Tarpon Sprin FL 7278687559 927am 060915 they recorded order.wma | 5/6/2015 11:32 AM | Windows Media Audio file | 181 KB |
| 070615 1144 CID Customer SVC 6412571367 AARP - Senior Alert robo bought from Life Watch...wma | 6/9/2015 9:51 AM | Windows Media Audio file | 8,262 KB |
| 070615 1154 CID TMI Management 8134139020 followup from droped call.wma | 7/6/2015 11:54 AM | Windows Media Audio file | 6,131 KB |
| 070615 1224 CID TMI Management 8134139020 2nd followup from droped call.wma | 7/6/2015 12:24 PM | Windows Media Audio file | 3,675 KB |
| 070615 1236pm CID 1136006339274 same AARP message as earlier from different call center.w... | 7/6/2015 12:33 PM | Windows Media Audio file | 6,508 KB |
| 070615 102pm CID 115852066033 same AARP message as earlier from different call center.w... | 7/6/2015 12:55 PM | Windows Media Audio file | 13,423 KB |
| 070615 112pm CID 2036587388 Stamford CT followup from 115852 call.wma | 7/6/2015 1:13 PM | Windows Media Audio file | 6,819 KB |
| 070615 138pm same AARP voice as earlier CID .wma | 7/6/2015 1:30 PM | Windows Media Audio file | 8,428 KB |
| 090215 1229pm CID Cell Phone FL 7064524865 said recording Medical Alert then Rescue Me M... | 7/6/2015 1:41 PM | Windows Media Audio file | 1,764 KB |
| 090215 1229pm CID Cell Phone FL 7064524865 my callback to number - not reachable.wma | 9/2/2015 12:46 PM | Windows Media Audio file | 10,288 KB |
| 110515 CID 800 Service 855-467-8145 1012am 627 - dropped after 1 push.wma | 9/2/2015 1:01 PM | Windows Media Audio file | 207 KB |
| 010416 1046am CID San Ramon CA 9252489120 hangup on disclosure of recording.wma | 11/5/2015 10:17 AM | Windows Media Audio file | 150 KB |
| 071316 1035 CID Anthony Lochett 8134865219 to 627 after pressing one left me on hold then h... | 1/14/2016 11:07 AM | Windows Media Audio file | 1,027 KB |
| | 7/13/2016 10:45 AM | Windows Media Audio file | 4,877 KB |

14. All of the calls had to be autodialed since they all used prerecorded messages and were not made by live humans. The telemarketing calls have been initiated using a

Case 3:19-cv-00831-WQH-BLM   Document 1   Filed 05/03/19   PageID.6   Page 6 of 64

telemarketing service that delivers prerecorded voice messages through telephone calls. This service is known as "voice broadcasting" or "robocalling."

15.     A prerecorded message was used at the outset of every call Plaintiff answered.

16.     The autodialing machine or software places calls and plays prerecorded messages, but does not bring the caller's sales representative onto the line unless and until the called party answers the phone and presses a button, for example "press 1 if you are interested", before the autodialer brings a live sales representative onto the line.

17.     Since the message did not identify the caller as required by 47 C.F.R. § 64.1200 and Plaintiff was sick and tired of getting these junk calls, he pressed 1 to find out who was calling him, and Defendants' call representative came on the line and went through the process of purchasing Defendants product on two occasions.  His American Express bill detailed that he was charged on the first purchase on 12/10/14, by "LIFEWATCH MOTO," a dba of Lifewatch INC even though the representative said their name was "Senior Life Support."  The second purchase on 5/15/18, detailed the charge was by "Med Guard Alert."  In both cases the shipping department called back to confirm the address and identified themselves as "Medical Alarm Systems."

18.     Plaintiff has received thousands of junk telemarketing calls and prosecuted his rights in numerous telemarketing cases and knows that sales representatives sometimes use false names at the outset of calls to avoid identification so he played along further just to assure the identity of the caller.

19.     Defendants were put on notice by Plaintiff via a demand letter dated 1/23/15, that he had received 16 robo calls up to that date, which is attached hereto as Exhibit 2 and incorporated herein as if set forth verbatim.

20.     When no response was received Plaintiff filed the first of 25 small claims actions in the San Diego Superior Court on or about 3/5/2015, case number 37-2015-320217, for alleged violations of The Telephone Consumer Protection Act (TCPA), 47 U.S.C. 227 and other laws regarding the call he received on 11/14/14, by defendant Life Watch INC.

21.     Defendant Life Watch INC. settled the one matter but refused to do a group

Case 3:19-cv-00831-WQH-BLM   Document 1   Filed 05/03/19   PageID.7   Page 7 of 64

settlement for the other calls.  Worse Plaintiff continued to receive more calls.

22.    Plaintiff filed two more small claims actions on 10/22/2015, in San Diego Superior Court case numbers 37-2015-00327094-SC-SC-CTL and 37-2015-00327095-SC-SC-CTL.

23.    Defendant Life Watch INC. as before settled the two above matters as well on 6/22/2016, but again refused to do a group settlement for any other calls.

24.    Plaintiff has since filed 22 other small claims actions against some or all of the Defendants of which six are on calendar for future trial, 15 were adjudicated in favor of Plaintiff by default and six of these have been satisfied through collection efforts.

25.    Defendants and their attorney have stopped communicating with Plaintiff.  They have choosen never to appear to defend themselves from any of these filings.

26.    Plaintiff believes Defendants failure to communicate or appear is part of an overall strategy so as to not jeopardize themselves in an ongoing lawsuit with the FTC and the Florida Attorney General.  This action was filed pursuant to the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108 and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Chapter 501, Part II, Florida Statutes (2014) in the U.S. District Court For The Northern District Of Illinois Eastern Division Case # 15cv5781, which is attached hereto as Exhibit 3 and incorporated herein as if set forth verbatim.

27.    Plaintiff believes Defendants failure to communicate or appear was also in part of an overall strategy so as to not jeopardize themselves in a class action lawsuit that alleged that they used "…robo-calls and other automating dialing systems…," in Reynolds, D.D.S. v. Lifewatch, Inc. (7:14-cv-03575), which is attached hereto as Exhibit 4 and incorporated herein as if set forth verbatim.

28.    Plaintiff alleges on information and belief that Defendants Lifewatch and Medguard (collectively, the "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive and unfair acts and practices and other violations of law alleged below.  Defendants have conducted the business practices through an interrelated

network of companies that have common ownership, business functions, and office locations, and that have commingled funds. Because the Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below. Defendants Sirlin, May, and Roman have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise EG:

    A.   The Lifewatch web site of https://www.lifewatch-usa.com now transfers directly to the Medguard Alert, INC site.

    B.   Also one of Plaintiffs judgments against Lifewatch case number 37-2017-15623-SC-SC-CTL, was paid by a check #5276 from Medguard on 10/23/18.

    C.   Both agreements used on the purchases had paperwork from Medical Alarm Systems.

29.    The 11 ROBO calls from 5/4/15 through 7/13/16, which are the subject of this action, were either identical or similar to the other calls Plaintiff received.

Liability of Lifewatch INC., d/b/a Lifewatch USA, Medical Alarm Systems and Lifewatch MOTO

30.    As detailed above when Plaintiff went forward with a purchase of the product after a transfer via a robo dial, he was billed by Defendant Lifewatch INC via their dba Lifewatch MOTO.

31.    Approximately one hour after the purchase, a follow-up verification call came from Plaintiff's billing entity Medical Alarm Systems.

Liability of Medguard Alert, INC.

31.    As detailed above when Plaintiff went forward with a purchase of the product after a transfer via a robo dial, he was billed by Defendant Medguard Alert INC.

32.    Approximately 23 hours after the purchase, a follow-up verification call came from Defendant's billing entity from 800-615-8364.

### Liability of Evan Sirlin

33.     Evan Sirlin as President of Lifewatch INC., on information and belief oversaw the operations of Lifewatch INC.

34.     Plaintiff alleges on information and belief that Defendant Sirlin knew the calls described above were being made and did nothing, or was willfully and recklessly ignorant of the fact his company and or its agents were making the calls described above. This included hiring in the ordering, procuring, and transmission of telemarketing calls including those complained of herein.  Sirlin was put on notice of this illegal activity by demand letters and a plethora of lawsuits filed and served on him prior to these calls being made.

### Liability of David Roman

35.     David Roman is Vice-President and Chairman of Lifewatch, and President, CEO, and Treasurer of Medguard, on information and belief oversaw the operations of these entities.

36.     Plaintiff alleges on information and belief that Defendant Roman knew the calls described above were being made and did nothing, or was willfully and recklessly ignorant of the fact his company and or its agents were making the calls described above. This included hiring in the ordering, procuring, and transmission of telemarketing calls including those complained of herein.  Roman was put on notice of this illegal activity by demand letters and a plethora of lawsuits filed and served on him prior to these calls being made.

### Actual Harm & Willful and Knowing Conduct

37.     Plaintiff has been harmed by the junk calls complained of herein by the direct waste of his time during the calls themselves, the indirect waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendants must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal

intrusions have caused.

38.     Plaintiff has been harmed by the calls he did not answer by the direct waste of his time in having to check the Caller ID while he was busy in meetings or with other projects before declining the call, the indirect waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendants must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

39.     During each of Defendants' calls, Plaintiff wanted to make or receive a call to/from someone else for his own personal or business reasons and was blocked from doing so by the line being tied up by Defendants.

40.     As a proximate result of these intrusions, Plaintiff suffered damage in an amount according to proof, but no less than 10% of his monthly phone bills in May of 2015 and June and July of 2015 since Defendants calls constituted 10% or more of the total calls to his phone during the heights of their junk calling campaign in those two months.

41.     Furthermore Plaintiff was physically disabled during this period and could not walk properly.  Defendants actions caused damage in an amount according to proof when they forced Plaintiff to continue to rush to his phone so as not to miss a call from his doctors and others.

42.     Plaintiff alleges on information and belief that Defendants made the calls described above intentionally, in the sense that the number called was the one they meant to call in pitching their services.

43.     Plaintiff alleges on information and belief that Defendants made the calls described above knowingly that they were made in contravention of the TCPA and other telemarketing laws and regulations.


## FIRST CAUSE OF ACTION

[TCPA – Autodialed Calls To Cell Phone – For All 11 Calls]

44.     Plaintiff realleges all paragraphs above and incorporates them herein by

reference.

45.     Plaintiff is bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

46.     Subdivision (b) (1) (A) (iii) of Section 227 of Title 47 of the United States Code makes it unlawful for any person to "Make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice...to any telephone number assigned to a paging service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call."

47.     Defendants have called Plaintiff's number assigned to a radio common carrier service—commonly called cell phone service—using an automatic telephone dialing system or an artificial or prerecorded voice during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658.  These calls are only the calls known to Plaintiff at this time and Plaintiff states on information and belief, without yet having the aid of full discovery, that it is quite likely that Defendant has made many more violative calls to Plaintiff's cell phone.  These calls were not made for any emergency purpose, nor were these calls exempt under subdivision (c) of section 64.1200 of title 47 of the Code of Federal Regulations.

48.     Subdivision (b)(3) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations of "this subsection", including 47 U.S.C. §227 (b) (1) (A) (iii).  Plaintiff may recover $500.00 for each violation, or both.  If the court finds that defendants' violations were willful or knowing, it may, in its discretion, award up to three times that amount.

WHEREFORE Plaintiff prays for judgment against defendants, and each of them, as follows:

On the FIRST CAUSE OF ACTION:

1. For an award of $500.00 for each violation of 47 U.S.C. § 227 (b);

2. For an award of $1,500.00 for each such violation found to have been willful;

On ALL CAUSES OF ACTION:

3. For costs of suit herein incurred; and

4. For such further relief as the Court deems proper.


DATED: May 3, 2019

KENNETH J. MOSER

# Exhibit 1

Case 3:19-cv-00831-WQH-BLM   Document 5-2   Filed 10/21/19   PageID.341   Page 23 of 75

Case 3:19-cv-00831-WQH-BLM   Document 1   Filed 05/03/19   PageID.14   Page 14 of 64
Case 2:13-cv-03455-JAK-SS   Document 201   Filed 05/13/14   Page 1 of 3   Page ID #:2378

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

LIFE ALERT EMERGENCY
RESPONSE, INC. a California
Corporation,

       Plaintiff,

    v.

CONNECT AMERICA.COM, LLC, a
Delaware limited liability company,
KENNETH GROSS, an individual,
LIFEWATCH, INC., a New York
Corporation, EVAN SIRLIN, an
individual, LIVE AGENT RESPONSE
1, LLC, a Florida limited liability
company, GREG SMALL, an
individual, TRILOGY INVESTMENT,
LLC, a Florida limited liability
company and DOES 1 to 10, inclusive,

       Defendants.

Case No. CV13-03455 JAK (SSx)

**ORDER RE PRELIMINARY
INJUNCTION**

SMRH:410821475.2

-1-

Case 3:19-cv-00831-WQH-BLM   Document 5-2   Filed 10/21/19   PageID.342   Page 24 of 75

Case 3:19-cv-00831-WQH-BLM   Document 1   Filed 05/03/19   PageID.15   Page 15 of 64
Case 2:13-cv-03455-JAK-SS   Document 201   Filed 05/13/14   Page 2 of 3   Page ID #:2379

1    For the reasons stated in the separate Order Re Plaintiff's Motion for a
2  Preliminary Injunction (Dkt. 200) the Motion for a Preliminary Injunction is granted
3  on the following terms, which are effective upon the entry of this Order, unless or
4  until modified by the Court upon motion or upon the completion of the trial
5  proceedings in this matter:
6        1.    LifeWatch and its subsidiaries, officers, directors, employees,
7  successors and related companies, are enjoined from:
8            a.    Using the following Life Alert trademarks:  I'VE FALLEN AND
9    I CAN'T GET UP!, U.S. Registration No. 3,255,726; LIFE ALERT, U.S.
10   Registration No. 2,552,506; LIFE ALERT YOU ARE NEVER ALONE
11   24/7, U.S. Registration No. 3,212,604; LIFE ALERT MOBILE, U.S.
12   Registration No. 4,053,816; HELP, I'VE FALLEN AND I CAN'T GET UP!;
13   LIFE ALERT EMERGENCY RESPONSE, INC.; LIFE ALERT THE LIFE
14   SAVING NETWORK  (collectively, "Life Alert's Trademarks");
15           b.    Working, through a contract or other agreement, with any person
16   or entity whom any of them knows, or after a reasonable inquiry should
17   know, is providing telemarketing services for LifeWatch by using any of the
18   Life Alert Trademarks
19           c.    Having LifeWatch acquire from a person or entity any customers
20   or customer accounts that LifeWatch, or any of its officers or directors, knows
21   or after a reasonable inquiry should know, were obtained through the use of
22   any of the Life Alert Trademarks either: (i) directly by such person or entity;
23   or (ii) indirectly by such person or entity, *i.e.,* by the actions of third-party
24   telemarketers who have been engaged by such person or entity
25           d.    Representing or implying that LifeWatch, or any of its products
26   or services, is in any way sponsored by, affiliated with, or endorsed or
27   licensed by Life Alert;
28

SMRH:410821475.3                                 -1-

e.      Manufacturing, transporting, promoting, importing, advertising, publicizing, distributing, offering for sale, or selling any goods or rendering any services using any of the Life Alert Trademarks;

f.      Knowingly assisting, inducing, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs 1(a) to (e) above.

2.     LifeWatch shall notify those with whom it has entered Purchase Agreements, *e.g.* Dkt. 175 and Dkt. 178, or similar contracts, and with whom it continues to do business, of this Order by providing a copy of it to them, and where consistent with its rights under the terms of such agreements, shall direct such persons to make the same notification to those telemarketers with whom each contracts with respect to the promotion and sale of LifeWatch products and services.

Dated: May 13, 2014

HON. JOHN A. KRONSTADT
UNITED STATES DISTRICT JUDGE

# Exhibit 2

Kenneth J. Moser
11280 Spica Drive
San Diego, CA 92126
Kmoser1@san.rr.com


1/23/2015

Evan T. Sirlin
LIFEWATCH INC. dba LIFEWATCH MOTO dba Lifewatch USA
266 MERRICK ROAD Suite 104
Lynbrook, NY  11563


RE: Unlawful Telemarketing Practices


Dear Mr. Sirlin,


I have received sixteen pre-recorded solicitations to my telephone lines on behalf of your firm in the last two months. The Telephone Consumer Protection Act (TCPA), 47 U.S.C. 227, regulates ALL telemarketing calls to both businesses and residences and provides the following definition for them: "The term telemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."  47 C.F.R. 64.1200(f)(7)

The TCPA details the following. Please refer to 47 U.S.C. §227(b)(1)(A)(B):

> **(b) Restrictions on use of automated telephone equipment**
> **(1) Prohibitions**
> **It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—**
> **(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—**
> **(i) to any emergency telephone line (including any "911" line and any emergency line of a hospital, medical physician or service office, health care facility, poison control center, or fire protection or law enforcement agency);**
> **(ii) to the telephone line of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment; or**
> **(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;**
> **(B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B);**

In addition the TCPA has detailed requirements regarding transmission of telemarketing calls titled "Technical and procedural standards."  Please refer to 47 U.S.C. §227(d)(1)(A):

"It shall be unlawful for any person within the United States— (A) to initiate any communication using a telephone facsimile machine, or to make any telephone call using any automatic telephone dialing system, that does not comply with the technical and procedural standards prescribed under this subsection, or to use any telephone facsimile machine or automatic telephone dialing system in a manner that does not comply with such standards."

These calls were specifically in violation of the federal law which requires that each pre-recorded solicitation, identify the caller at the beginning of the call and during or after the message, state clearly the telephone number of such business, other entity, or individual placing the call.  Please refer to 47 U.S.C. 227 (d)(3)(A):

"All artificial or prerecorded telephone messages (i) shall, at the beginning of the message, state clearly the identity of the business, individual, or other entity initiating the call, and (ii) shall, during or after the message, state clearly the telephone number or address of such business, other entity, or individual;"

Also these calls transmitted false caller ID information using a bogus numbers mainly from Utah and Maryland. The TCPA has stipulated requirements for the transmission of caller ID information stating in section 64.1200(e):

"Any person or entity that engages in telemarketing, as defined in Section 64.1200(f)( 7) must transmit caller identification information."

In addition to the federal statutes I have identified above, California Civil Code §1770(a)(22 )(A) completely prohibit these types of telemarketing calls TO ANY NUMBER.  The later provides penalties in addition to Federal law and injunctive relief as an unfair business practice:

"Disseminating an unsolicited prerecorded message by telephone without an unrecorded, natural voice first informing the person answering the telephone of the name of the caller or the organization being represented, and either the address or the telephone number of the caller, and without obtaining the consent of that person to listen to the prerecorded message."

My intention also is to cause you to cease the dissemination of pre-recorded telemarketing messages to telephone lines. This is not an appropriate marketing avenue for you.

This is a serious matter. The Federal Communications Commission (FCC) actively enforces violations of this type and can order forfeitures of up to $11,000 per call. In fact, the FCC recently fined a local Orange County company $5.38 million for repeated violations of the TCPA. At least two class action lawsuits have also been filed against this company and potential liabilities range into the trillions.

Unfortunately, only the laws of economics will stop illegal telemarketing campaigns. At least with live operators, there is a significant cost associated with initiating those annoying calls. With pre-recorded messages and automatic dialing devices, costs are negligible. This is exactly why congress enacted the TCPA and provided for legal action to be initiated by affected consumers. As Senator Hollings declared to Congress during the enactment of the TCPA; "It is telephone terrorism, and it has got to stop." 137 Cong. Rec. 30821 (102d Cong., 1st Sess., Nov 7, 1991

Please send me a copy of your company's written Do Not Call policy, if such a policy exists.

This letter shall serve as formal demand of payment of $96,000.00 in statutory damages, calculated as follows:

$24,000.00, consisting of $500.00 each for the 16 violations of 47 U.S.C. 227 (b)(1)(A)&(B) as discussed above and treble damages provided by 47 U.S.C. §227 for violations of the Act when done willfully or knowingly.

$24,000.00, consisting of $500.00 each for the 16 violations of 47 U.S.C. 227 (d)(3)(A)(i) as discussed above and treble damages provided by 47 U.S.C. §227 for violations of the Act when done willfully or knowingly.

$24,000.00, consisting of $500.00 each for the 16 violations of 47 U.S.C. 227 (d)(3)(A)(ii) as discussed above and treble damages provided by 47 U.S.C. §227 for violations of the Act when done willfully or knowingly.

$24,000.00, consisting of $500.00 each for the 16 violations of 47 CFR 64.1601 (e) as discussed above and treble damages provided by 47 U.S.C. §227 for violations of the Act when done willfully or knowingly.

In addition to the above the TCPA allows $500.00 in remedies for violating 47 CFR 64.1200 Sec. (d)(1) which states:

> **(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do- not- call list.**

$500.00 in remedies for violating 47 CFR 64.1200 Sec. (d)(2) which states:

> **(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do- not- call list.**

$500.00 in remedies for violating 47 CFR 64.1200 Sec. (d)(4) which states:

> **(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges**

If legal action is necessary, I will seek additional remedies available under state and federal law and will consider seeking an order to enjoin you and your company from placing further pre-recorded telephone solicitations. I will move forward with legal action in the event payment is not received by you within thirty (30) days. I will name both you and your firm as defendants, as all participants are deemed joint and severally libel in TCPA cases. As an owner/corporate officer you are personally libel, see State of Texas v. Am. Blast Fax, Inc, 164 F. Supp. 2d 892, 2001 TCPA Rep. 1198 (W.D.Tex. Aug 17, 2001).


Sincerely,


Kenneth J. Moser

# Exhibit 3

Case 3:19-cv-00831-WQH-BLM   Document 5-2   Filed 10/21/19   PageID.349   Page 31 of 75
Case 3:19-cv-00831-WQH-BLM   Document 1   Filed 05/03/19   PageID.22   Page 22 of 64
Case: 1:15-cv-05781 Document #: 165 Filed: 07/14/16 Page 1 of 23 PageID #:6124

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and | ) |
| | ) |
| STATE OF FLORIDA, OFFICE OF THE ATTORNEY GENERAL, DEPARTMENT OF LEGAL AFFAIRS, | ) Case No. 15cv5781 |
| Plaintiffs, | ) Judge Gary Feinerman |
| v. | ) Mag. Judge Jeffrey T. Gilbert |
| LIFEWATCH INC., a New York corporation, also d/b/a LIFEWATCH USA and MEDICAL ALARM SYSTEMS, | ) |
| SAFE HOME SECURITY, INC., a Connecticut corporation, | ) |
| MEDGUARD ALERT, INC., a Connecticut corporation, | ) |
| EVAN SIRLIN, individually and as an officer or manager of Lifewatch Inc., | ) |
| MITCHEL MAY, individually and as an officer or manager of Lifewatch Inc., and | ) |
| DAVID ROMAN, individually and as an officer or manager of Lifewatch Inc., Safe Home Security, Inc., and Medguard Alert, Inc. | ) |
| Defendants. | ) |

## AMENDED COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

Plaintiffs, the Federal Trade Commission ("FTC"), and the State of Florida, Office of the Attorney General, Department of Legal Affairs ("State of Florida"), for their Complaint allege:

1.      The FTC brings this action under Sections 13(b) and 19 of the Federal Trade

Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and

Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, to

obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of

contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other

equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15

U.S.C. § 45(a), and in violation of the FTC's Trade Regulation Rule entitled "Telemarketing

Sales Rule" ("TSR"), 16 C.F.R. Part 310.

2.      The State of Florida brings this action pursuant to the Telemarketing and

Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108 and

the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Chapter 501, Part II, Florida

Statutes (2014), to obtain temporary and permanent injunctions, consumer restitution, civil

penalties and other equitable relief, and reimbursement of costs and attorneys' fees for

Defendants' acts or practices in violation of the TSR and FDUTPA.  The State of Florida has

conducted an investigation, and the head of the enforcing authority, Attorney General Pamela Jo

Bondi, has determined that an enforcement action serves the public interest as required by

FDUPTA Section 501.207, Florida Statutes (2014).

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a),

and 1345, and 15 U.S.C. §§ 45(a), 53(b), 57b, 6102(c), and 6105(b).

4.      This Court has supplemental jurisdiction over the State of Florida's claims

pursuant to 28 U.S.C. § 1367.

Case 3:19-cv-00831-WQH-BLM   Document 1   Filed 05/03/19   PageID.24   Page 24 of 64
Case: 1:15-cv-05781 Document #: 165 Filed: 07/14/16 Page 3 of 23 PageID #:6126

5.      Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and (2), (c)(1) and (2), and (d),  and 15 U.S.C. § 53(b).

## PLAINTIFFS

6.      The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also enforces the Telemarketing Act, 15 U.S.C. §§ 6101-6108.  Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing acts or practices.

7.      The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the TSR and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 56(a)(2)(A), 56(a)(2)(B), 57b, 6102(c) and 6105(b).

8.      The State of Florida is the enforcing authority under FDUTPA pursuant to Florida Statutes Section 501.203(2) and is authorized to pursue this action to enjoin violations of the TSR, and in each such case, to obtain damages, restitution, and other compensation on behalf of Florida residents.  The State of Florida is authorized to pursue this action to enjoin violations of FDUTPA and to obtain legal, equitable or other appropriate relief including rescission or reformation of contracts, restitution, the appointment of a receiver, disgorgement of ill-gotten monies, or other relief as may be appropriate. §501.207, Fla. Stat.

## DEFENDANTS

9.  Defendant Lifewatch Inc. ("Lifewatch"), also doing business as Lifewatch USA and Medical Alarm Systems, is a New York corporation with its principal place of business at 266 Merrick Road, Lynbrook, New York 11563.  Lifewatch transacts or has transacted business in this district and throughout the United States.

10.  Defendant Safe Home Security, Inc. ("Safe Home Security"),  is a Connecticut corporation with its principal place of business at 55 Sebethe Drive, Cromwell, Connecticut 06416.  Safe Home Security transacts or has transacted business in this district and throughout the United States.

11.  Defendant Medguard Alert, Inc. ("Medguard"),  is a Connecticut corporation with its principal place of business at 55 Sebethe Drive, Cromwell, Connecticut 06416.  Medguard transacts or has transacted business in this district and throughout the United States.

12.  Defendant Evan Sirlin ("Sirlin") is the President of Lifewatch.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Sirlin, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

13.  Defendant Mitchel May ("May") is a Vice-President of Lifewatch.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant May, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

4

14.     Defendant David Roman ("Roman") is a Vice-President and Chairman of Lifewatch, and President, CEO, and Treasurer of Safe Home Security and Medguard. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Roman, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

15.     Defendants Lifewatch, Safe Home Security, and Medguard (collectively, the "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive and unfair acts and practices and other violations of law alleged below. Defendants have conducted the business practices described below through an interrelated network of companies that have common ownership, business functions, and office locations, and that have commingled funds. Because the Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below. Defendants Sirlin, May, and Roman have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.

## COMMERCE

16.     At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS PRACTICES

17.    Since at least 2012, Defendants have sold medical alert systems to consumers throughout the United States and Canada. Defendants market their medical alert systems to consumers through various means, including through unsolicited telemarketing calls.

18.    Defendants have engaged numerous telemarketers to conduct unsolicited telemarketing calls marketing Defendants' medical alert systems. Among the telemarketers whom Defendants have engaged are Worldwide Info Services, Inc. and its affiliates, which were sued by the FTC and the State of Florida, relating to their marketing of Defendants' medical alert systems in the case captioned *FTC, et al. v. Worldwide Info Services, Inc., et al.*, Case No. 6:14-CV-8-ORL 28DAB (M.D. Fla. filed Jan. 6, 2014).

19.    Defendants, directly or through one or more intermediaries, initiate telephone calls to consumers throughout the United States and Canada to induce sales of Defendants' medical alert systems. In numerous instances, the telemarketing calls have been initiated using a telemarketing service that delivers prerecorded voice messages through telephone calls. This service is known as "voice broadcasting" or "robocalling."

20.    Many of the consumers who receive these unsolicited calls are elderly, live alone, and have limited or fixed incomes. They often are in poor health, suffer from memory loss or dementia, and rely on family members, friends, or health professionals to manage their finances and to make financial or health related decisions for them.

21.    In numerous instances, the prerecorded messages have purported to be from "John from the shipping department of Emergency Medical Alert," and have informed consumers that a medical alert system has been purchased for them. The recording has indicated that consumers will receive the system at "no cost to you whatsoever," and that the shipping costs have also

6

already been paid. The message has instructed consumers to press a number on their telephone to schedule delivery, and it also has given consumers the option to press a different number to decline shipment of the medical alert system.

22.     Defendants sometimes have used other prerecorded messages, but those messages also have indicated that the medical alert system is available to senior citizens for free. In numerous instances, Defendants' messages have stated that the American Heart Association, American Diabetes Association, and/or other nonprofit organizations or health care providers are urging senior citizens to obtain medical alert systems, and that these systems are available for free. All of these messages instruct consumers to press a number for more information, or to press a different number to be removed from Defendants' calling list.

23.     When consumers press the number to speak to a live operator, they have been connected to telemarketers, who tell consumers that the medical alert system has a value of over $400, but that consumers will receive the system for free. Defendants' telemarketers sometimes have told consumers that the system is free because a friend, family member, health care provider, or acquaintance referred the consumer to Defendants. In other instances, Defendants' telemarketers have told consumers that the system is free because a friend, family member, health care provider, or acquaintance purchased the medical alert system for the consumer. When asked, Defendants' telemarketers have cited confidentiality concerns in refusing to provide the name of the person who referred the consumer to Defendants, or who purchased the medical alert system for the consumer.

24.     Defendants' telemarketers explain that the medical alert system consists of a necklace or bracelet that enables consumers to receive help during emergencies. Defendants' telemarketers have touted that their medical alert system has been recommended by the

Case 3:19-cv-00831-WQH-BLM   Document 5-2   Filed 10/21/19   PageID.356   Page 38 of 75

Case 3:19-cv-00831-WQH-BLM   Document 1   Filed 05/03/19   PageID.29   Page 29 of 64
Case: 1:15-cv-05781 Document #: 165 Filed: 07/14/16 Page 8 of 23 PageID #:6131

American Heart Association, the American Diabetes Association, the National Institute on Aging, the AARP, the American Red Cross, other reputable organizations, and/or health care providers.

25.    In fact, the American Heart Association, the American Diabetes Association, the National Institute on Aging, the AARP, the American Red Cross, other reputable national nonprofit organizations, and other health care providers do not endorse Defendants' medical alert system.

26.    Although the medical alert system was originally represented as being free, at the end of the call Defendants' telemarketers inform consumers for the first time that there is a monthly monitoring fee of between $29.95 and $39.95. To cover this monthly fee, consumers are required to provide their credit card or bank account information, but they have been assured that the billing cycle does not start until consumers receive and activate the system. Defendants' telemarketers frequently tell consumers that if the consumers sign up for Defendants' medical alert system, the consumers will be given opportunities to receive discounts on other products the consumers typically purchase, which will offset the monthly monitoring fees. For example, Defendants' telemarketers frequently tell consumers they will receive $1000 or $3000 in grocery coupons that the consumers can use for their everyday purchases at their regular grocery stores, a $50 restaurant discount card monthly, and/or a 75% prescription discount card, if the consumers sign up for Defendants' medical alert system.

27.    If consumers tell Defendants' telemarketers that they need time to think about whether to get the system, or that they want to speak with their family before agreeing to provide their payment information, Defendants' telemarketers have responded that consumers will only receive the system if they sign up that day. Defendants' telemarketers also frequently tell

consumers that if they decide to cancel the service, consumers will have no further obligation and Defendants will pay for return shipping of the medical alert system.

28.    In numerous instances, after providing Defendants with their credit card or bank account information, consumers have discovered that nobody they know referred them to Defendants or purchased a medical alert system for them. In addition, consumers usually have been charged the first monitoring fee within a day of receiving the telephone call, before they have received and activated the system.

29.    Many consumers subsequently have tried to cancel their accounts, either because they realize that Defendants' telemarketers lied to them or for other reasons. Consumers often have had difficulty canceling, however. Some consumers have had trouble reaching customer service representatives, while others have reached representatives who either claim not to have the authority to issue cancellations or try to keep the consumers from cancelling by aggressively re-pitching the product or offering special deals. Consumers are told that in order to cancel, they must return the medical alert system and pay for return shipping, or pay $400 if they do not return the medical alert system. Consumers also are told that they will continue to be billed the monthly service fee until Defendants receive the medical alert system.

30.    While telemarketing their medical alert systems, Defendants, acting directly or through one or more intermediaries, have made numerous calls to telephone numbers on the National Do Not Call Registry ("Registry"), as well as to consumers who have previously asked Defendants not to call them again. In some instances, Defendants or their telemarketers also have "spoofed" their calls by transmitting phony Caller Identification information so that call recipients do not know the true source of the calls.

31.     In numerous instances, Defendants, acting directly or through one or more intermediaries, have initiated telemarketing calls that failed to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call: the identity of the seller; that the purpose of the call is to sell goods or services; or the nature of the goods or services.  In numerous instances, Defendants, acting directly or through one or more intermediaries, have initiated prerecorded telemarketing calls to consumers that failed to promptly make such disclosures, or to immediately thereafter disclose the mechanism for asserting a Do Not Call request.

32.     In numerous instances, Defendants, acting directly or through one or more intermediaries, have made outbound prerecorded calls that delivered messages to induce the sale of goods or services when the persons to whom these telephone calls were made had not expressly agreed, in writing, to authorize the seller to place prerecorded calls to such persons.

## VIOLATIONS OF THE FTC ACT

33.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

34.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.  15 U.S.C. § 45(a).

### COUNT ONE
### Misrepresentation of Material Facts
### (By Plaintiff FTC)

35.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of medical alert systems, Defendants have represented, directly or indirectly, expressly or by implication, that:

    A.    A friend, family member, health care provider, or other acquaintance of the consumer referred the consumer to Defendants, or purchased the medical alert system for the consumer;

    B.    Defendants' medical alert system is endorsed by reputable organizations, including, but not limited to, the American Heart Association, the American Diabetes Association, the National Institute on Aging, the AARP, the American Red Cross, and/or health care providers;

    C.    Consumers will not be charged the first monitoring fee until they have received and activated the medical alert system; and

    D.    Consumers may cancel the monitoring service at any time without any further financial obligation.

36.    In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 35 of this Complaint:

    A.    A friend, family member, health care provider, or other acquaintance of the consumer did not refer the consumer to Defendants, or purchase the medical alert system for the consumer;

    B.    Defendants' medical alert system was not endorsed by reputable organizations, including, but not limited to, the American Heart Association, the American Diabetes Association, the National Institute on Aging, the AARP, the American Red Cross, and/or health care providers;

    C.    Consumers were charged the first monitoring fee before they had received and activated the medical alert system; and

D. Consumers could not cancel the monitoring service at any time without further financial obligation.

37. Therefore, Defendants' representations as set forth in Paragraph 35 of this Complaint are false and misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C.§ 45(a).

## THE TELEMARKETING SALES RULE

38. Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108. The FTC adopted the original Telemarketing Sales Rule in 1995, extensively amended it in 2003, and amended certain provisions thereafter. 16 C.F.R. Part 310.

39. Defendants are "seller[s]" and/or "telemarketer[s]" engaged in "telemarketing," and Defendants have initiated, or have caused telemarketers to initiate, "outbound telephone call[s]" to consumers to induce the purchase of goods or services, as those terms are defined in the TSR, 16 C.F.R. § 310.2(v), (aa), (cc), and (dd).

40. Under the TSR, an "outbound telephone call" means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution. 16 C.F.R. § 310.2(v).

41. The TSR prohibits sellers and telemarketers from misrepresenting, directly or by implication, in the sale of goods or services, any material aspect of the nature or terms of the seller's refund, cancellation, exchange, or repurchase policies. 16 C.F.R. § 310.3(a)(2)(iv).

42. The TSR prohibits sellers and telemarketers from misrepresenting, directly or by implication, in the sale of goods or services, a seller's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity. 16 C.F.R. § 310.3(a)(2)(vii).

43.     The TSR prohibits sellers and telemarketers from making a false or misleading statement to induce any person to pay for goods or services. 16 C.F.R. § 310.3(a)(4).

44.     The TSR, as amended in 2003, established a "do-not-call" registry (the "National Do Not Call Registry" or "Registry"), maintained by the FTC, of consumers who do not wish to receive certain types of telemarketing calls. Consumers can register their telephone numbers on the Registry without charge either through a toll-free telephone call or over the Internet at www.donotcall.gov.

45.     Consumers who receive telemarketing calls to their registered numbers can complain of Registry violations the same way they registered, through a toll-free telephone call or over the Internet at www.donotcall.gov, or by otherwise contacting law enforcement authorities.

46.     The TSR prohibits sellers and telemarketers from initiating an outbound telephone call to telephone numbers on the Registry. 16 C.F.R. § 310.4(b)(1)(iii)(B).

47.     The TSR prohibits sellers and telemarketers from initiating an outbound telephone call to any person when that person previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered. 16 C.F.R. § 310.4(b)(1)(iii)(A).

48.     The TSR requires that sellers and telemarketers transmit or cause to be transmitted the telephone number and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call, or transmit the customer service number of the seller on whose behalf the call is made and, when made available by the telemarketer's seller, the name of the seller. 16 C.F.R. § 310.4(a)(8).

Case 3:19-cv-00831-WQH-BLM   Document 5-2   Filed 10/21/19   PageID.362   Page 44 of 75
Case 3:19-cv-00831-WQH-BLM   Document 1   Filed 05/03/19   PageID.35   Page 35 of 64
Case: 1:15-cv-05781 Document #: 165 Filed: 07/14/16 Page 14 of 23 PageID #:6137

49.     The TSR requires telemarketers in an outbound telephone call to disclose truthfully, promptly, and in a clear and conspicuous manner, the following information:

    A.     The identity of the seller;

    B.     That the purpose of the call is to sell goods or services; and

    C.     The nature of the goods or services.

16 C.F.R. § 310.4(d).

50.     As amended, effective December 1, 2008, the TSR prohibits a telemarketer from engaging, and a seller from causing a telemarketer to engage, in initiating an outbound telephone call that delivers a prerecorded message to induce the purchase of any good or service unless the message promptly discloses:

    A.     The identity of the seller;

    B.     That the purpose of the call is to sell goods or services; and

    C.     The nature of the goods or services.

16 C.F.R. § 310.4(b)(1)(v)(B)(ii).

51.     As amended, effective September 1, 2009, the TSR prohibits initiating a telephone call that delivers a prerecorded message to induce the purchase of any good or service unless the seller has obtained from the recipient of the call an express agreement, in writing, that evidences the willingness of the recipient of the call to receive calls that deliver prerecorded messages by or on behalf of a specific seller.  The express agreement must include the recipient's telephone number and signature, must be obtained after a clear and conspicuous disclosure that the purpose of the agreement is to authorize the seller to place prerecorded calls to such person, and must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.  16 C.F.R. § 310.4(b)(1)(v)(A).

52. It is a violation of the TSR for any person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any practice that violates Sections 310.3(a), (c) or (d), or 310.4 of the TSR. 16 C.F.R. § 310.3(b).

53. Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE TELEMARKETING SALES RULE
### COUNT TWO
**Misrepresentations in Violation of the TSR**
**(By Both Plaintiffs)**

54. In numerous instances, in connection with the telemarketing of goods and services, Defendants have misrepresented, directly or by implication, that:

A. A friend, family member, health care provider, or other acquaintance of the consumer referred the consumer to Defendants, or purchased the medical alert system for the consumer;

B. Defendants' medical alert system is endorsed by reputable organizations, including, but not limited to, the American Heart Association, the American Diabetes Association, the National Institute on Aging, the AARP, the American Red Cross, and/or health care providers;

C. Consumers will not be charged the first monitoring fee until they have received and activated the medical alert system; and

D. Consumers may cancel the monitoring service at any time without any further financial obligation.

Case 3:19-cv-00831-WQH-BLM   Document 5-2   Filed 10/21/19   PageID.364   Page 46 of 75

Case 3:19-cv-00831-WQH-BLM   Document 1   Filed 05/03/19   PageID.37   Page 37 of 64
Case: 1:15-cv-05781 Document #: 165 Filed: 07/14/16 Page 16 of 23 PageID #:6139

55.     Defendants' acts and practices, as described in Paragraph 54 above, are deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. §§ 310.3(a)(2)(iv), (a)(2)(vii) and (a)(4) .

## COUNT THREE
### Assisting and Facilitating Deceptive Telemarketing Acts or Practices
### (By Both Plaintiffs)

56.     In numerous instances, Defendants have provided substantial assistance or support to sellers or telemarketers whom Defendants knew or consciously avoided knowing induced consumers to pay for goods and services through the use of false or misleading statements, in violation of the TSR, 16 C.F.R. §§ 310.3(a)(2)(vii) and (a)(4).

57.     Defendants' acts or practices as described in Paragraph 56 above, are deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.3(b).

## COUNT FOUR
### Violation of the National Do Not Call Registry
### (By Both Plaintiffs)

58.     In numerous instances, in connection with telemarketing, Defendants have engaged, or caused a telemarketer to engage, in initiating an outbound telephone call to a person's telephone number on the National Do Not Call Registry in violation of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B).

## COUNT FIVE
### Failure to Honor Do Not Call Requests
### (By Both Plaintiffs)

59.     In numerous instances, in connection with telemarketing, Defendants have engaged, or caused a telemarketer to engage, in initiating an outbound telephone call to a person who previously has stated that he or she does not wish to receive an outbound telephone call

16

made by or on behalf of the seller whose goods or services are being offered, in violation of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(A).

### COUNT SIX
### Failure to Transmit Caller Identification
### (By Both Plaintiffs)

60.    In numerous instances, in connection with telemarketing, Defendants have failed to transmit, or cause to be transmitted, the telephone number and name of the telemarketer or of the seller to any caller identification service in use by a recipient of a telemarketing call, in violation of the TSR, 16 C.F.R. § 310.4(a)(8).

### COUNT SEVEN
### Initiation of Unlawful Prerecorded Messages On or After September 1, 2009
### (By Both Plaintiffs)

61.    In numerous instances on or after September 1, 2009, Defendants have made, or caused others to make, outbound telephone calls that delivered prerecorded messages to induce the purchase of goods or services when the persons to whom these telephone calls were made had not signed an express agreement, in writing, authorizing the seller to place prerecorded calls to such person.

62.    Defendants' acts and practices, as described in Paragraph 61 above, are abusive telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.4(b)(1)(v)(A).

### COUNT EIGHT
### Failure to Make Required Oral Disclosures
### (By Both Plaintiffs)

63.    In numerous instances, including on or after December 1, 2008, in the course of telemarketing goods and services, Defendants have made, or caused others to make, outbound telephone calls that deliver a prerecorded message in which the telemarketer or message failed to

disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call:

      A.    The identity of the seller;

      B.    That the purpose of the call is to sell goods or services; and

      C.    The nature of the goods or services.

64.    Defendants' acts and practices, as described in Paragraph 63 above, are abusive telemarketing acts or practices that violate the TSR, 16 C.F.R. §§ 310.4(b)(1)(v)(B)(ii) and (d).

## COUNT NINE
### Assisting and Facilitating Abusive Telemarketing Acts or Practices
### (By Both Plaintiffs)

65.    In numerous instances, Defendants have provided substantial assistance or support to sellers or telemarketers whom Defendants knew, or consciously avoided knowing, were engaged in violations of § 310.4 of the TSR.

66.    Defendants' acts or practices as described in Paragraph 65 above are deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.3(b).

## VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

67.    Section 501.204 of the Florida Deceptive and Unfair Trade Practices Act, Chapter 501, Part II, Florida Statutes, prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."

Case 3:19-cv-00831-WQH-BLM   Document 5-2   Filed 10/21/19   PageID.367   Page 49 of 75
Case 3:19-cv-00831-WQH-BLM   Document 1   Filed 05/03/19   PageID.40   Page 40 of 64
Case: 1:15-cv-05781 Document #: 165 Filed: 07/14/16 Page 19 of 23 PageID #:6142

**COUNT TEN**
**Florida Deceptive and Unfair Trade Practices Act Violation by all Defendants**
**(By Plaintiff State of Florida)**

68.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of medical alert systems, Defendants have represented, directly or indirectly, expressly or by implication, that:

A.     A friend, family member, health care provider, or other acquaintance of the consumer referred the consumer to Defendants, or purchased the medical alert system for the consumer;

B.     Defendants' medical alert system is endorsed by reputable organizations, including, but not limited to, the American Heart Association, the American Diabetes Association, the National Institute on Aging, the AARP, the American Red Cross, and/or health care providers;

C.     Consumers will not be charged the first monitoring fee until they have received and activated the medical alert system; and

D.     Consumers may cancel the monitoring service at any time without any further financial obligation.

69.     In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 68 of this Complaint:

A.     A friend, family member, health care provider, or other acquaintance of the consumer did not refer the consumer to Defendants, or purchase the medical alert system for the consumer;

B.     Defendants' medical alert system was not endorsed by reputable national nonprofit organizations, including, but not limited to, the American Heart Association, the

19

American Diabetes Association, the National Institute on Aging, the AARP, the American Red Cross, and/or health care providers;

        C.     Consumers were charged the first monitoring fee before they had received and activated the medical alert system; and

        D.     Consumers may not cancel the monitoring service at any time without further financial obligation.

    70.    Defendants' representations as set forth in Paragraph 68 of this Complaint are false and misleading and likely to mislead consumers acting reasonably, and consumers within the State of Florida and elsewhere were actually misled by Defendants' misrepresentations in violation of Section 501.204 of the FDUTPA.

## CONSUMER INJURY

    71.    Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, the TSR, and FDUPTA.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

    72.    Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

Case 3:19-cv-00831-WQH-BLM   Document 5-2   Filed 10/21/19   PageID.369   Page 51 of 75
Case 3:19-cv-00831-WQH-BLM   Document 1   Filed 05/03/19   PageID.42   Page 42 of 64
Case: 1:15-cv-05781 Document #: 165 Filed: 07/14/16 Page 21 of 23 PageID #:6144

73.     Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the TSR, including the rescission or reformation of contracts, and the refund of money.

74.     Section 4(a) of the Telemarketing Act, 15 U.S.C. § 6103(a), empowers this Court to grant the State of Florida injunctive and such other relief as the Court may deem appropriate to halt violations of the TSR and to redress injury to consumers, including the award of damages, restitution, or other compensation.

75.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction to allow Plaintiff State of Florida to enforce its state law claims against Defendants in this Court for violations of the FDUPTA, and to grant such relief as provided under state law, including injunctive relief, restitution, civil penalties, costs and attorneys' fees, and such other relief to which the State of Florida may be entitled.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff FTC, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b); Plaintiff State of Florida, pursuant to Section 4(a) of the Telemarketing Act, 15 U.S.C. § 6103(a), and the Florida Deceptive and Unfair Trade Practices Act, Chapter 501, Part II; and the Court's own equitable powers, request that the Court:

A.     Award Plaintiffs such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including, but not limited to, temporary and preliminary injunctions, an order preserving assets, and an accounting;

B.     Enter a permanent injunction to prevent future violations of the FTC Act, the TSR, and the FDUPTA by Defendants;

     C.     Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, the TSR, and the FDUPTA, including, but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies;

     D.     Award civil penalties in an amount up to $10,000 per transaction pursuant to Florida Statutes Section 501.2075 and up to $15,000 per transaction pursuant to Florida Statutes Section 501.2077 for the willful acts and practices of Defendants in violation of FDUTPA; and

     E.     Award Plaintiffs the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Respectfully Submitted,

DAVID C. SHONKA
Acting General Counsel

Dated: June 2, 2016

  /s/David A. O'Toole
DAVID A. O'TOOLE
SAMANTHA GORDON
Federal Trade Commission, Midwest Region
55 West Monroe Street, Suite 1825
Chicago, Illinois 60603
Telephone: (312) 960-5634
Facsimile: (312) 960-5600
Email: dotoole@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

PAMELA JO BONDI
Attorney General
State of Florida

Dated: June 2, 2016

  /s/Denise Beamer
DENISE BEAMER
KRISTEN JOHNSON
Assistant Attorney General
Office of the Attorney General
Consumer Protection Division
135 W. Central Blvd., Suite 670
Orlando, Florida 32801

22

Case 3:19-cv-00831-WQH-BLM   Document 5-2   Filed 10/21/19   PageID.371   Page 53 of 75
Case 3:19-cv-00831-WQH-BLM   Document 1   Filed 05/03/19   PageID.44   Page 44 of 64
Case: 1:15-cv-05781 Document #: 165 Filed: 07/14/16 Page 23 of 23 PageID #:6146

Telephone:  (407) 316-4840
Facsimile:  (407) 245-0365

Attorneys for Plaintiff
STATE OF FLORIDA
OFFICE OF THE ATTORNEY GENERAL

# Exhibit 4

Case 3:19-cv-00831-WQH-BLM   Document 5-2   Filed 10/21/19   PageID.373   Page 55 of 75

Case 3:19-cv-00831-WQH-BLM   Document 1   Filed 05/03/19   PageID.46   Page 46 of 64
Case 7:14-cv-03575-KMK-JCM   Doc #: 83   Filed 10/30/15   Page 1 of 19 Page ID #: 813

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————X
:
EDWARD J. REYNOLDS, D.D.S., Individually and on     :   Civil Action No.: 7:14-cv-03575-KMK
behalf of all others similarly situated,            :
:
Plaintiff,            :
:
vs.                                  :   **SECOND AMENDED**
:   **CLASS ACTION COMPLAINT**
LIFEWATCH, INC., LIFEWATCH, INC. d/b/a              :   **AND JURY DEMAND**
LIFEWATCH USA, ABC CORPORATIONS 1-10,               :
AND JOHN DOES 1-10,                                 :
:
Defendants.           :
———————————————————————X

Plaintiff, EDWARD J. REYNOLDS, D.D.S., by way of this Second Amended Class Action

Complaint against defendants, on behalf of himself and all others similarly situated, alleges upon personal

knowledge as to himself, and, as to other matters, upon information and belief, including the investigation

of counsel, as follows:

## NATURE OF THE ACTION

1.     This class action is brought on behalf of all persons in the United States who were

contacted by defendants and/or their agents by telephone or otherwise and who paid money to defendants

for their medical alert devices and/or monitoring service ("device and/or service"). The class period will

be determined.   The deceptive business practices of the defendants and/or their agents (hereinafter

"defendants") included, among other things, calling plaintiff and other consumers (hereinafter "plaintiff",

"class", "class members", or "consumers"), and telling them that a family member, friend, or other person

purchased the defendants' medical alert device for them and/or a doctor recommended it for them. Thus,

consumers were told that the device was "free" and that they only had to pay for the monthly monitoring

fees, as their family member, friend or other person intended. The defendants' statements were false,

Case 3:19-cv-00831-WQH-BLM   Document 5-2   Filed 10/21/19   PageID.374   Page 56 of 75

Case 3:19-cv-00831-WQH-BLM   Document 1   Filed 05/03/19   PageID.47   Page 47 of 64
Case 7:14-cv-03575-KMK-JCM   Doc #: 83   Filed 10/30/15   Page 2 of 19 Page ID #: 814

untrue, and/or otherwise misrepresentations.  The defendants subsequently charged consumers for the device and/or a monthly fee for monitoring services. There were also other deceptive practices, misrepresentations, and improper actions relating to the calls and/or sales of the devices.  As a result of the defendants' improper and deceptive acts, the plaintiff and the class have been damaged.

2.      Plaintiff seeks relief, including the following:

 (a) An award of appropriate damages for all members of the class who paid for the device and/or related services.

 (b) Disgorgement from defendants of all monies wrongfully obtained as a result of defendants' improper, unfair, and deceptive business practices and improper acts;

 (c) An injunctive order prohibiting defendants from engaging in the same improper acts in the future based on applicable Consumer Protection Laws and/or other grounds;

 (d) Treble damages, punitive damages, and/or attorney's fees pursuant to the applicable statutes.

 (e) Certification of a class (and/or sub-classes) as described herein or as the Court deems proper and just pursuant to Rule 23 of the Federal Rules of Civil Procedure;

 (f) Designation of plaintiff's counsel as Class Counsel pursuant to Rule 23 of the Federal Rules of Civil Procedure;

 (g) Designation of plaintiff, and/or other class members, as Class Representative(s) pursuant to Rule 23 of the Federal Rules of Civil Procedure;

 (h) An award of attorney's fees to Class Counsel; and

 (i) Such other relief as the Court deems just and proper.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), because this action is between citizens of different states (including members of the class), a class action has been

pled, and the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

    4.    Venue is proper in this District under 28 U.S.C. § 1391.  The plaintiff, Edward J. Reynolds, D.D.S., resides in this District.  Further, defendants conduct business in New York and in this District, and receive substantial compensation and profits from the sale of their device and/or service in New York and in this District.

    5.    This Court has personal jurisdiction over defendants to this action because defendants engage in substantial business in New York, some of the wrongdoing alleged took place in New York, and the defendants' principal place of business is in New York.

## PARTIES

    6.    The plaintiff, Edward J. Reynolds, D.D.S., resides in Pearl River, New York, Rockland County.

    7.    The defendants, LifeWatch, Inc. and LifeWatch, Inc. d/b/a LifeWatch (hereinafter "defendant", "defendants", "LifeWatch", "LifeWatch entities", or "LifeWatch defendants"), are related corporate entities or companies, or is one company, involved in various aspects of the medical alert device and services business and/or other business.

    8.    LifeWatch is a New York Corporation with its principal place of business in Lynbrook, New York.

    9.    Defendant LifeWatch Inc. d/b/a LifeWatch USA is a New York Corporation with its principal place of business in Lynbrook, New York.

    10.    LifeWatch has offices at 226 Merrick Road, Lynbrook, New York, 11563.

    11.    LifeWatch has offices at 1344 Broadway, Hewlett, New York, 11557.

    12.    LifeWatch uses agents and/or representatives to advertise, market and sell their products and/or services in New York and elsewhere.

Case 3:19-cv-00831-WQH-BLM   Document 5-2   Filed 10/21/19   PageID.376   Page 58 of 75
Case 3:19-cv-00831-WQH-BLM   Document 1   Filed 05/03/19   PageID.49   Page 49 of 64
Case 7:14-cv-03575-KMK-JCM   Doc #: 83   Filed 10/30/15   Page 4 of 19 Page ID #: 816

13.     Evan Sirlin is the President and/or CEO of LifeWatch and as such is authorized to act on behalf of and/or control the defendant company.  Upon information and belief, Mr. Sirlin is a corporate officer and/or director who participates personally in the defendants' business, which includes fraudulent, deceptive, and improper conduct, including practices that are in violation of the New York Code, Article 22-A: Consumer Protection From Deceptive Acts and Practices, Sections 349-350 of New York's General Business Law, ("New York Consumer Protection Act"), and/or other applicable statutes and regulations.

14.     Defendants, ABC CORPORATIONS (1-10) and JOHN DOES (1-10), are additional actors and/or co-conspirators and/or agents of named defendants, including but not limited to, directors, officers, and employees of defendants, its affiliates, parent or subsidiary corporations or other legal entities, and third party agents of and/or principals of named defendants.  With respect to all allegations in this Complaint, one or more ABC Corporation and/or John Doe defendants participated in, approved, cooperated in, directed, and/or had actual or constructive knowledge of all activities alleged, acted in concert with all or some of the other named and unnamed defendants pursuant to a common design with them, and/or gave substantial assistance or encouragement to other defendants in carrying out the alleged activities.  One or more of the ABC Corporation and/or John Doe defendants profited through false pretense, false representation, improper and/or deceptive business practices, and/or actual fraud, and/or willfully caused injury and/or damage to the Class members.  In addition, one or more ABC Corporation and/or John Doe defendants were involved in developing, designing, implementing, supervising and/or promoting the alleged activities.  Their involvement included, but was not limited to, calling and/or otherwise contacting consumers concerning the defendants' devices and/or services, as described herein.

15.     The defendants and/or their authorized representatives, distributors, and/or agents marketed and sold the defendants' products and/or services.  The agents were authorized to act, and did act, as representatives and/or agents of the LifeWatch defendants.

16.     The defendants exercised sufficient control over their agents' actions, including the telemarketing methods and/or practices, that they can be held responsible for their actions.

Case 3:19-cv-00831-WQH-BLM Document 5-2 Filed 10/21/19 PageID.377 Page 59 of 75

Case 3:19-cv-00831-WQH-BLM Document 1 Filed 05/03/19 PageID.50 Page 50 of 64
Case 7:14-cv-03575-KMK-JCM Doc #: 83 Filed 10/30/15 Page 5 of 19 Page ID #: 817

17.     The representatives, agents, distributors and/or telemarketers that the defendants contracted with, worked with, and authorized to act on defendants' behalf included Worldwide Information Services, Inc., a Florida Corporation, and The Consumer Voice, LLC, a Florida LLC.

18.     The defendants entered into contracts and/or other agreements with their representatives and agents, which authorized them to act as the defendants' agents.

19.     There were numerous consumer complaints and/or lawsuits, which would reasonably be expected to give the defendants notice of the improper and/or deceptive business practices being used to sell the defendants' devices and/or services to consumers.

20.     Based on the elderly age of consumers who would use the defendants' devices and/or services, the consumers who defendants and/or their agents marketed and/or sold to were senior citizens, who can be more prone to such improper and deceptive practices.

21.     Defendants and/or their agents marketed and sold their products and services to the plaintiff and other class members by sales calls (including use of robo-calls and/or other automated dialing systems and including calls to consumers on "do not call" lists), during which false promises and/or statements were made, misrepresentations were made, and other deceptive practices and improper acts were taken to make plaintiff and other class members buy defendants' products and/or services. The false promises and/or statements, misrepresentations, and other deceptive acts included telling consumers that a family member, friend, or other person had purchased the defendants' device and/or services for the consumer and that the consumer only needed to continue paying the monthly service fees. Consumers were also told that device was free but in reality they could not receive or use the device without paying for the monthly service fees in the future.

22.     The defendants contacted, or authorized their agents to contact, the plaintiff and other class members and consumers in New York and elsewhere and to engage in improper, deceptive and/or fraudulent business practices, including marketing and sales efforts in violation of the New York Consumer Protection Act.

Case 3:19-cv-00831-WQH-BLM   Document 5-2   Filed 10/21/19   PageID.378   Page 60 of 75
Case 3:19-cv-00831-WQH-BLM   Document 1   Filed 05/03/19   PageID.51   Page 51 of 64
Case 7:14-cv-03575-KMK-JCM   Doc #: 83   Filed 10/30/15   Page 6 of 19 Page ID #: 818

23.    The defendants' business includes fraudulent, deceptive, and improper conduct, including practices that are in violation of the New York Code, Article 22-A: Consumer Protection From Deceptive Acts and Practices, Sections 349-350 of New York's General Business Law, ("New York Consumer Protection Act"), and/or other applicable statutes and regulations.

24.    The defendants provided direction, information, forms, scripts and/or other materials to employees, representatives, and/or agents to be used for the sale of the defendants' products and services and/or approved or allowed the employees, representatives, or agents to use improper sales methods.

25.    The defendants authorized their agents to act on their behalf in the marketing and sale of defendants' products and services.

26.    The defendants authorized their agents to enter into contracts on their behalf and they used the agents to market and sell their products and services.

27.    The defendants and their agents agreed to the aforementioned business arrangements with each other, which led to selling and marketing defendants' products and/or services and which produced sales, all of which benefited the defendants.

28.    Defendants had control over their agents in the selling and marketing of the products and/or services.

29.    Evan Sirlin has sworn under oath, as CEO of LifeWatch, Inc., on behalf of the company, as follows:

   1) LifeWatch has "purchase agreements" with "outside sellers", which Sirlin has reviewed recently.

   2) LifeWatch has a "list" of the "outside sellers" that it uses for telemarketing sales calls to consumers.

   3) LifeWatch does not "monitor" the outside sellers on their list.

   4) When LifeWatch purchases customer accounts from outside sellers, LifeWatch becomes immediately and solely responsible for fulfilling the sale and then delivering

Case 3:19-cv-00831-WQH-BLM   Document 5-2   Filed 10/21/19   PageID.379   Page 61 of 75
Case 3:19-cv-00831-WQH-BLM   Document 1   Filed 05/03/19   PageID.52   Page 52 of 64
Case 7:14-cv-03575-KMK-JCM   Doc #: 83   Filed 10/30/15   Page 7 of 19 Page ID #: 819

the products and services to the customers. And so, there is no need for LifeWatch to reference the outside seller as part of the order, billing, or product delivery processes.

5) LifeWatch maintains that the outside seller list is comprised of a unique combination of sellers, which affords LifeWatch a competitive advantage.

6) LifeWatch's outside seller list was developed after many years of trial and error and research, and after significant money was expended by LifeWatch.

30.     Thus, in Sirlin's Declaration, the LifeWatch defendants have admitted that they fail to monitor their agents who make telemarketing sales calls for the company, which conveniently allows the LifeWatch defendants to receive pecuniary gains and income as a result of their agents (the "outside sellers") improper and/or deceptive business practices.

31.     Defendants' intentional practice of "not monitoring" its agents and their telemarketing practices, even after numerous complaints and lawsuits, among other things, makes them liable for their agents' improper and deceptive business practices.

32.     LifeWatch has stated, in Interrogatory Answers in a separate case, that it "does not engage in telemarketing" but Sirlin, on behalf of LifeWatch, refers to LifeWatch's "outside sellers" as telemarketers in an Affidavit submitted in that case and elsewhere.

33.     The defendants' Purchase Agreement with their outside sellers provides that when defendants' outside sellers make a sale of the defendants' products and/or services, the defendants principal executive office (which is run by Evan Sirlin, the CEO) reviews the transaction submitted and decides whether to accept or reject it.

34.     Under the aforementioned Purchase Agreement, the defendants pay commissions to the outside sellers, further evidencing that the sellers are the defendants' agents.

35.     The aforementioned Purchase Agreement provides that the defendants will "fulfill" orders for sale of defendants' products that are made to consumers by defendants' agents (i.e., their "outside sellers").

Case 3:19-cv-00831-WQH-BLM   Document 5-2   Filed 10/21/19   PageID.380   Page 62 of 75

Case 3:19-cv-00831-WQH-BLM   Document 1   Filed 05/03/19   PageID.53   Page 53 of 64
Case 7:14-cv-03575-KMK-JCM   Doc #: 83   Filed 10/30/15   Page 8 of 19 Page ID #: 820

36.   The Purchase Agreement provides that defendants shall "process payments" from consumers for sales by defendants' agents.

37.   The Purchase Agreement provides that defendants and their agents/outside sellers shall determine the prices together, further evidencing the agency relationship.

38.   Under the Purchase Agreement, any notice concerning the agreement by defendants' agents to defendants must be directed to the individual defendant, Evan Sirlin, which is further indication that he is authorized to act on behalf of the defendant.

39.   Before the Purchase Agreement was used as the contract between defendants and their agents, they used a "Marketing Agreement" to memorialize their agreement.

40.   In addition to the Purchase Agreements, defendants have used, or still do use, a "Telemarketing Services Agreement" with their outside sellers/agents, as testified to by Gerardo Duran as an employee of defendants and as proven by other evidence, including the agreements.

41.   Defendants have "conference calls" with their outside sellers/agents, as testified to by Gerardo Duran as an employee of defendants.

42.   Defendants refer to agents of the outside sellers as "sub-agents", as testified to by Gerardo Duran as an employee of defendants.

43.   The money for the initial charge to consumers for defendants' product and/or services goes into the defendants' bank account and the defendants later pay their agents, as testified to by Gerardo Duran as an employee of defendants.

44.   As of February 19, 2014, a LifeWatch defendants' employee, Lauren Vanderwater, was a "call center liaison" and her duties included reviewing recordings of calls between the defendants "outside sellers" and consumers, as testified to by Sarai Baker as an employee of defendants.

45.   Ms. Baker, as an employee of the LifeWatch defendants, and as the Director of Operations, has reviewed sales scripts used by the defendants' agents/outside sellers.

46.     The defendants' outside sellers provide recordings of calls with consumers to defendants for review.

47.     The defendants "randomly request recordings" of calls between outside sellers and consumers and the recordings are reviewed by defendants' employees, including Ms. Vanderwater.

48.     Ms. Vanderwater reports to the Director of Operations if she hears a recording that involves a customer not being treated "in a kind way" by the defendants' "outside sellers".

49.     The defendants randomly listen to recordings of calls between defendants' outside sellers and consumers in order to "make sure that outside call centers are not making misleading statements". (Baker Deposition).

50.     Evan Sirlin (President and/or CEO of the defendant) and Mitchell May (Vice-President of the defendant) directed Ms. Baker, as an employee of defendants, to give specific instructions and/or direction to outside sellers/call centers concerning their interaction with consumers. (Baker Deposition)

51.     Baker, as defendants' employee, instructed sales agents in outside call centers to change their sales pitches to consumers they called on defendants' behalf. (Baker Deposition)

52.     A former employee, Leslie Steinmetz, has stated that Mr. Sirlin, as President and/or CEO of the defendant, and others at the defendant company, were aware of, and closely involved in, the telemarketing efforts of telemarketers for the defendants.

53.     The defendants used authorized sales representatives and/or agents to market and sell their devices and/or services.

54.     The defendants and/or their agents advertise, market, and/or sell through telephone calls to consumers.

55.     The defendants and/or their agents continue to call consumers as part of their marketing and sales activities.

56.     In order to receive the device and/or services, the consumer has to pay the monthly fees.

Case 3:19-cv-00831-WQH-BLM   Document 5-2   Filed 10/21/19   PageID.382   Page 64 of 75

Case 3:19-cv-00831-WQH-BLM   Document 1   Filed 05/03/19   PageID.55   Page 55 of 64
Case 7:14-cv-03575-KMK-JCM   Doc #: 83   Filed 10/30/15   Page 10 of 19 Page ID #: 822

57.   Defendants tell consumers that they will not be charged until the device is activated but defendants charge consumers immediately, often before activation of the device.

58.   The defendants are liable for the deceptive practices, misrepresentations, and other improper actions in the marketing and sale of the devices.

59.   Defendants regularly and routinely violated the New York Consumer Protection Laws, and/or other applicable statutes and/or regulations by, among other things, advising consumers that they are entitled to a free device, as described in detail in this Complaint, but the consumers must pay the monthly fees.

60.   At all times alleged herein, each and every defendant was an agent, employee, and/or otherwise acting on behalf of all or some of the other defendants.  In doing the things alleged herein, each and every defendant was acting within the course and scope of that agency or employment and was acting with the consent, permission and authorization of the remaining defendants.

61.   As a direct result of the defendants' improper, fraudulent and/or deceptive actions, the plaintiff sustained an ascertainable loss as well as other damages including being charged for and paying monthly fees, even though the device was not activated and even though no one had "bought" the device for him as he was told.  As a result, the plaintiff seeks relief.

## STATEMENT OF FACTS

62.   The plaintiff received a telephone call from the defendants and/or their agents in July of 2013 advising him that he was entitled to one of the defendants' devices because a family member purchased it for him, however, he was told he had to pay the monthly monitoring fee.

63.   The defendants lured the plaintiff into giving his credit card number for the monthly fees by improperly and/or fraudulently advising him that he was entitled to a free device because a family member purchased it for him.  The only reason that the plaintiff paid the monthly fees was because he was told a family member purchased the device for him and wanted him to have the service, which he relied on.  Had he not been informed that, he would not have given his card information for monthly fees.  The

defendants, by their fraudulent and/or improper methods, took advantage of the plaintiff, as well as other consumers, and in doing so, violated the New York Consumer Protection Laws and/or other statutes and/or regulations.

64.     The defendants and/or their agents knowingly and willfully contacted the plaintiff and advised him that a family member purchased the defendants' device for him. In fact, a family member had not purchased a device for plaintiff. The defendants intended the plaintiff to rely on their misrepresentations. The plaintiff did, in fact, rely upon the misrepresentations and gave his credit card number to defendants for their monthly fees.

65.     As a direct result of the defendants' improper, fraudulent and/or deceptive practices and actions, the plaintiff sustained an ascertainable loss as well as other damages. As a result, the plaintiff seeks relief.

66.     Plaintiff was charged $34.95 per month on numerous occasions by defendants, starting on or around July 12, 2013. The credit card charge reads "Medical Alarms Hewlett, N.Y.".

67.     Plaintiff was charged even though the device that defendants and/or their agents shipped to him was never activated.

68.     The plaintiff continued to be charged by defendants even after the defendants were contacted on plaintiff's behalf and advised that the device/product sent to the plaintiff had not been activated and would not be activated. The defendants responded by informing plaintiff that the defendants would continue to charge the plaintiff's credit card.

69.     The letter that was enclosed in the box that was sent to the plaintiff indicates that the box includes "instructions on how to connect and use the equipment, responder forms, financial agreement, and our terms and conditions". Later, the letter refers to the defendants' "terms and conditions". However, the materials referred to, including the financial agreement and the terms and conditions, were not enclosed and were not provided to the plaintiff.

Case 3:19-cv-00831-WQH-BLM   Document 5-2   Filed 10/21/19   PageID.384   Page 66 of 75

Case 3:19-cv-00831-WQH-BLM   Document 1   Filed 05/03/19   PageID.57   Page 57 of 64
Case 7:14-cv-03575-KMK-JCM   Doc #: 83   Filed 10/30/15   Page 12 of 19 Page ID #: 824

70.     The letter also refers to the defendants "Customer Satisfaction 30 Day Guarantee", but there was nothing provided and no details given.

71.     Upon information and belief, and based on the investigation, the defendant participated in the fraudulent conduct and/or had actual knowledge of it, which makes them liable under the Consumer Protection Laws and applicable case law.

72.     Members of the class and/or sub-classes had the same or similar experiences with the defendants as the named plaintiff/class representative did.


## CLASS ACTION ALLEGATIONS

**Class Definition**

73.     Plaintiff files this case in his individual capacity and as a class action on behalf of himself and all others similarly situated.   He and/or other class member(s) who will be named as "class representative(s)" at the time a motion is filed to certify the proposed class, will represent the class and/or sub-class, which is composed of all persons in New York and/or in the United States who purchased and/or paid for (in whole or in part), the defendants' medical alert devices and/or monthly services.   The class period will be determined.

74.     In addition, there may be a sub-class of New York residents, and/or residents of other states, depending on developments in the case.

**Impracticable Joinder**

75.     The class is composed of thousands of persons geographically dispersed throughout New York and other parts of the United States, the joinder of whom in one action is impracticable.   The disposition of their claims in a class action will provide substantial benefits to all parties and the Court. The class is sufficiently numerous since there are thousands of consumers in New York and in the United States who come within the class(s).

## Risk of Inconsistent or Varying Adjudications

76.     Prosecution of separate actions by class members would risk inconsistent or varying adjudications, which would establish incompatible standards of conduct for the defendants.

77.     Adjudications by individual members of the class would, as a practical matter, be potentially dispositive of the interests of other members of the class and substantially impair or impede their ability to protect their interests.  Class-wide adjudication of these claims, therefore, is appropriate.

78.     Class-Wide Injunctive/Declaratory Relief.  Defendants have acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief and/or declaratory relief with respect to the class as a whole appropriate and rendering class-wide adjudication of these claims appropriate.

## Common Questions of Law and Fact

79.     Class members have a common interest in the questions of law and fact involved in this matter and how they will be decided.   These factual and/or legal questions common to the class predominate over individual factual or legal questions.  The common questions of law and fact include the following:

      (a)     Whether the defendants acted improperly towards the class, including their marketing and sales practices;

      (b)     Whether the acts and practices of the defendants violated New York's Consumer Protection Laws and/or other applicable laws and regulations;

      (c)     Whether defendants, through their misconduct, have been unjustly enriched at the expense of plaintiff and other class members;

      (d)     Whether plaintiff and the class are entitled to damages (including statutory damages) and/or restitution from the defendants; and

      (e)     Whether the class could suffer irreparable harm unless their ongoing obligation to make monthly payments to defendants is addressed and, what the nature of the

Case 3:19-cv-00831-WQH-BLM   Document 5-2   Filed 10/21/19   PageID.386   Page 68 of 75

Case 3:19-cv-00831-WQH-BLM   Document 1   Filed 05/03/19   PageID.59   Page 59 of 64
Case 7:14-cv-03575-KMK-JCM   Doc #: 83   Filed 10/30/15   Page 14 of 19 Page ID #: 826

equitable and injunctive relief that is necessary to prevent that harm should be.

## Typicality

80.    Class members, among other things, were informed that the defendants' device had been purchased for them, or otherwise provided to them, and that they had to pay monthly fees. As a result, they paid money to defendants for monthly fees. The plaintiff and any other class members who may be named as the class representatives are asserting claims that are typical of the claims of the entire class.

## Fair and Adequate Representation

81.    The class representatives will fairly and adequately represent and protect the interests of the class in that they have no interests that are antagonistic to those of the other members of the class. The plaintiff has retained counsel who is competent and experienced in the handling of litigation, including class action litigation.

## Superiority of Class Action Procedure

82.    The plaintiff and the members of the class have all suffered damages as a result of defendants' improper and deceptive practices. Absent a class action, defendants will likely retain millions of dollars received as a result of defendants' wrongdoing. The improper conduct would go un-remedied and uncorrected. Absent a class action, the class members will not receive restitution. These violations of law will be allowed to stand without remedy and the defendants will retain the proceeds and ill-gotten gains. Absent a class action, the equitable and injunctive relief sought, will not occur. All of the aforementioned makes class treatment of the issues superior.

83.    Class certification of this matter will be appropriate under Rule 23.

## CLAIMS

84.    Pursuant to notice pleading, plaintiff hereby alleges each and every cause of action and remedy at law or in equity supported by the facts alleged in this Complaint. Those causes of action and remedies at law or in equity include the following:

## COUNT ONE
### VIOLATIONS OF NEW YORK'S GENERAL BUSINESS LAW, SECTIONS 349-350, (CONSUMER PROTECTION LAWS), AND/OR OTHER APPLICABLE STATUTES AND REGULATIONS

85.     Plaintiff repeats and reiterates each and every allegation contained in the paragraphs of this Complaint marked and designated "1" through "84", inclusive with the same force and effect as though the same was more fully set forth at length herein.

86.     Section 349 and Section 350 of the New York General Business Law (hereinafter "New York Consumer Protection Laws") state, in relevant part:

> **New York General Business – Article 22-A - § 349 Deceptive Acts and Practices Unlawful**
>
> General Business
> § 349. Deceptive acts and practices unlawful. (a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.
>
> **New York General Business – Article 22-A - § 350 False Advertising Unlawful**
>
> § 350. False advertising unlawful. False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

87.     Defendants violated the New York Consumer Protection Laws and/or other applicable statutes and/or regulations by engaging in the improper and deceptive practices that are described in detail in this Complaint.

88.     The elements of Section 349 and/or other applicable statutes and/or regulations have been satisfied. The improper and deceptive business practices of the defendants and/or their agents were: (1) consumer-oriented (the plaintiff and the class are consumers); (2) misleading in a material respect (i.e., misrepresenting to consumers that a family member or friend purchased a medical device for the consumer is obviously misleading in a material respect, along with the other deceptive acts and improper actions); and (3) the plaintiff and the class were injured as a result of the deceptive acts or practices (the consumers paid money to defendants, causing obvious damages).

-15-

89. The defendants' improper and deceptive business practices are also in violation of Section 350. The defendants' actions, as described in detail in this Complaint, constitute false advertising.

90. The individual plaintiff and class members were caused to suffer damages as a result of defendants' acts and/or omissions, including ascertainable losses.

## COUNT TWO
## FRAUD/INTENTIONAL MISREPRESENTATION

91. Plaintiff repeats and reiterates each and every allegation contained in the paragraphs of this Complaint marked and designated "1" through "90", inclusive with the same force and effect as though the same was more fully set forth at length herein.

92. Defendants knowingly and intentionally made false statements of existing material facts in their contact with plaintiff and class members as described in detail in this Complaint.

93. The representations, misrepresentations, and/or omissions were likely to mislead a reasonable consumer acting reasonably under the circumstances.

94. Defendants intended for plaintiff and class members to rely on their material misrepresentations of fact.

95. Plaintiff and class members reasonably and justifiably relied on defendants' material misrepresentations, unaware of the falsity of defendants' representations, and had a right to rely on those representations.

96. The individual plaintiff and the class members were caused to suffer damages as a result of defendants' acts and/or omissions.

## COUNT THREE
## EQUITABLE AND INJUNCTIVE RELIEF,
## INCLUDING PURSUANT TO NEW YORK GENERAL BUSINESS LAW, SECTION 349(h),
## AND/OR OTHER APPLICABLE STATUTES AND/OR REGULATIONS

97. Plaintiff repeats and reiterates each and every allegation contained in the paragraphs of this Complaint marked and designated "1" through "96", inclusive with the same force and effect as though

the same was more fully set forth at length herein.

98.   The class has no complete, speedy, and adequate remedy at law with respect to the fraud, misrepresentations, and/or improper and deceptive business practices by the defendants and/or their agents (as described in detail in this Complaint). The class and others will suffer continuing, immediate, and irreparable injury as a proximate cause of defendants' actions and/or omissions absent injunctive and equitable relief by this Court.   The defendants must be ordered to stop such improper and deceptive business practices in order to prevent future harm, as is authorized in the applicable Consumer Laws.

99.   Section 349 includes a provision about injunctive relief, which provides as follows:

> (h)  In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions.

100.   Thus, plaintiff and class members are specifically authorized under the statute cited, and/or under other applicable statutes and/or regulations, to seek injunctive relief and have the defendants enjoined from continuing their unlawful, improper and deceptive practices.

## COUNT FOUR

### UNJUST ENRICHMENT

101.   Plaintiff repeats and reiterates each and every allegation contained in the paragraphs of this Complaint marked and designated "1" through "100", inclusive with the same force and effect as though the same was more fully set forth at length herein.

102.   The defendants' improper and unlawful activities (as described in detail in this Complaint), including misrepresentations, resulted in the unjust enrichment of the defendants.  The defendants were unjustly enriched in the amount of money made by them through the sale of their products and services.

103.   The class has been damaged in the amount that the defendants were unjustly enriched and/or the amounts they paid and their damage was caused by the defendants' acts and/or omissions.

## PRAYER FOR RELIEF

**WHEREFORE**, as a result of the forgoing, plaintiff on behalf of himself and his individual claims, as well as on behalf of all other persons similarly situated, prays for the following relief:

A. an Order certifying the class, appointing the named plaintiff as class representative, and appointing plaintiff's counsel as class counsel;

B. an Order awarding compensatory damages to plaintiff and all members of the class for all claims in the Complaint;

C. an Order requiring disgorgement of defendants' ill-gotten gains to pay restitution to plaintiff and all members of the class, and to restore to the public all funds acquired by means of any act or practice declared by this Court to be unlawful, fraudulent or unfair business acts or practices, a violation of laws, statutes, or regulations, or constituting unfair competition or false, untrue or misleading advertising;

D. an Order providing for equitable and injunctive relief, including an Order directing defendants to immediately stop their improper and deceptive business practices;

E. treble damages pursuant to the New York Consumer Laws and/or other applicable statutes and/or regulations in connection with defendants' illegal and improper actions;

F. that this Court award attorney's fees and costs of suit to the plaintiff and the Class, including attorney's fees under the New York Consumer Laws and/or other applicable statutes and/or regulations; and

G. such other and further relief as the Court may deem necessary or appropriate.

Case 3:19-cv-00831-WQH-BLM   Document 5-2   Filed 10/21/19   PageID.391   Page 73 of 75
Case 3:19-cv-00831-WQH-BLM   Document 1   Filed 05/03/19   PageID.64   Page 64 of 64
Case 7:14-cv-03575-KMK-JCM   Doc #: 83   Filed 10/30/15   Page 19 of 19 Page ID #: 831

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: October 28, 2015

GAINEY McKENNA & EGLESTON

Barry J. Gainey (7560)
*Attorney for Plaintiff*
95 Route 17 South, Suite 310
Paramus, New Jersey 07652
T: (201) 225-9001
F: (201) 225-9002
E-Mail: bgainey@gme-law.com

# U.S. District Court
## Southern District of California (San Diego)
## CIVIL DOCKET FOR CASE #: 3:19-cv-00831-WQH-BLM
### Internal Use Only

Moser v. Medguard Alert, Inc. et al
Assigned to: Judge William Q. Hayes
Referred to: Magistrate Judge Barbara Lynn Major
Cause: 47:0227 FCC-Unsolicited Telephone Sales

Date Filed: 05/03/2019
Jury Demand: None
Nature of Suit: 890 Other Statutory
Actions
Jurisdiction: Federal Question

Early Neutral Evaluation Conference:
Case Management Conference:
Status Hearing:
**Status Conference:**
Mandatory Settlement Conference:

Settlement Conference:
Settlement Disposition Conference:
Pretrial Conference:
**Final Pretrial Conference:**
Trial Date:

**Plaintiff**

**Kenneth J. Moser**

represented by **Kenneth J. Moser**
**11280 Spica Drive**
San Diego, CA 92126
**858-627-4190**
PRO SE

**V.**

**Defendant**

**Medguard Alert, Inc.**
*a Connecticut corporation*

**Defendant**

**Lifewatch Inc.**
*a New York corporation*
*doing business as*
Lifewatch USA
*doing business as*
Medical Alarm Systems
*doing business as*
Lifewatch Moto

**Defendant**

**Evan Sirlin**
*individually and as an officer or*
*manager of Lifewatch Inc.*

**Defendant**

**David Roman**

*individually and as an officer or*
*manager of Lifewatch Inc. and*
*Medguard Alert, Inc.*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/03/2019 | 1 | COMPLAINT against Lifewatch Inc., Medguard Alert, Inc., David Roman, Evan Sirlin ( Filing fee $ 400 receipt number CAS111425), filed by Kenneth J. Moser. (Attachments: # 1 Civil Cover)<br><br>The new case number is 3:19-cv-00831-MMA-BLM. Judge Michael M. Anello and Magistrate Judge Barbara Lynn Major are assigned to the case. (Moser, Kenneth)(cdw) (Entered: 05/03/2019) |
| 05/03/2019 | 2 | Summons Issued.<br>**Counsel receiving this notice electronically should print this summons and serve it in accordance with Rule 4, Fed.R.Civ.P and LR 4.1. Summons has been provided to plaintiffs not receiving notice electronically.** (cdw) (Entered: 05/03/2019) |
| 05/04/2019 | 3 | MINUTE ORDER OF RECUSAL. Judge Michael M. Anello is no longer assigned. Case reassigned to Judge William Q. Hayes for all further proceedings. The new case number is 19-cv-831-WQH-BLM.(All non-registered users served via U.S. Mail Service)(no document attached) (als) (Entered: 05/06/2019) |