UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH J. MOSER,<br><br>         Plaintiff,<br><br>v.<br><br>LIFEWATCH INC., et al.,<br><br>         Defendants. | Case No.: 19-cv-831-WQH-BLM<br><br>**ORDER** |

HAYES, Judge:

  The matters before the Court are the Motions to Dismiss Plaintiff's First Amended Complaint filed by Defendants David Roman (ECF No. 9) and Lifewatch, Inc., and Medguard Alert, Inc. (ECF No. 10).

## I. BACKGROUND

  On May 3, 2019, Plaintiff Kenneth J. Moser filed a Complaint against Defendants Medguard Alert, Inc. ("Medguard"); Lifewatch, Inc. ("Lifewatch") d/b/a Lifewatch USA, Medical Alarm Systems, and Lifewatch Moto; Evan Sirlin; and David Roman. (ECF No. 1). Moser amended the Complaint on November 14, 2019. (ECF No. 7). In the First Amended Complaint ("FAC"), Moser alleges that "Defendants transmitted seventeen pre-recorded and auto-dialed telephone calls to Plaintiff's cellular telephone number . . . between May 4, 2015, and October 21, 2019." (*Id.* ¶ 9). Moser alleges that he received calls

1

from various numbers on May 4, May 6, June 9, July 6, September 2, and November 5, 2015; January 14 and July 13, 2016; May 15, 2018; and October 21, 2019. Moser alleges that all but the seventeenth call "used a non-natural robotic voice to play a pre-recorded message" attempting to sell Moser "a personal medical alert system." (*Id.* ¶ 15). Moser alleges that the seventeenth call "used an automated Avatar system to ask questions before transferring to a live operator." (*Id.*).

Moser alleges that he knows the calls were made by Defendants "because he had similar calls made to him using the same pre-recorded message which was linked back to the Defendants in other [small claims] cases filed by Plaintiff." (*Id.* ¶ 18). Moser alleges that in order to find out who was calling him, Moser "went through the process of purchasing Defendants['] product on two occasions." (*Id.* ¶ 21). Moser alleges that he made the first purchase on December 10, 2014, "in [relation to] a previous [small claims] case." (*Id.* ¶ 22). Moser alleges that his credit card bill showed that "'LIFEWATCH MOTO,' a dba of Lifewatch INC," charged Moser for the purchase. (*Id.*). Moser alleges that he made the second purchase on May 15, 2018. Moser alleges that his credit card bill showed that "Med Guard Alert" charged Moser for the purchase. (*Id.* ¶ 23). Moser alleges that the paperwork for both purchases came from "Medical Alarm Systems." (*Id.* ¶ 38).

Moser alleges that on March 5, 2015, he "filed the first of twenty-five small claims actions in the San Diego Superior Court . . . for alleged violations of the Telephone Consumer Protection Act [("TCPA")], 47 U.S.C. [§] 227[,] and other laws regarding the call he received by defendant [Lifewatch]." (*Id.* ¶ 27). Moser alleges that Lifewatch settled one action but refused to settle the other actions, and Moser "continued to receive more calls from Defendants even though he had requested to be put on their internal do-not-call list." (*Id.* ¶ 28). Moser alleges that he "filed two more small claims actions on October 22, 2015, in San Diego Superior Court . . . ." (*Id.* ¶ 29). Moser alleges that Lifewatch settled the two actions in June 2016. Moser alleges that he "has since filed twenty-two other small claims actions against some or all of the Defendants of which six are on calendar for future

trial, fifteen were adjudicated in favor of Plaintiff by default[,] and six of these have been satisfied through collection efforts for calls not alleged in this case." (*Id.* ¶ 31).

Moser alleges that Lifewatch and Medguard operate as "a common enterprise." (*Id.* ¶ 38). Moser alleges that the Lifewatch website transfers visitors to the Medguard website. Moser alleges that the judgment in Moser's favor in a previous case against Lifewatch was paid with a check from Medguard. Moser alleges that Defendant Evan Sirlin is the President of Lifewatch. Moser alleges that Defendant David Roman is the Vice-President and Chairman of Lifewatch and the President, CEO, and Treasurer of Medguard.

Moser brings claims against Defendants for violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(c)(2). Moser seeks statutory damages, treble damages, "[i]njunctive relief to prevent further illegal calls," and costs. (*Id.* at 14).

On December 3, 2019, Defendants Roman, Lifewatch, and Medguard[1] (collectively, "Defendants") filed Motions to Dismiss Moser's FAC. (ECF Nos. 9, 10). Defendants move to dismiss the FAC pursuant to Rules 12(b)(4), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that process was insufficient, service of process was insufficient, and Moser fails to state a claim upon which relief can be granted. Defendant Roman further moves to dismiss the FAC pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure on the ground that the Court lacks personal jurisdiction. On December 23, 2019, Moser filed Oppositions to the Motions to Dismiss. (ECF Nos. 13, 14). On December 30, 2019, Defendants filed Replies. (ECF Nos. 15, 16).

## II. SERVICE OF PROCESS

Defendants move to dismiss the FAC pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure on the grounds that Moser failed to serve the Summons and Complaint within the 90-day period required by Rule 4(m) of the Federal Rules of Civil Procedure. Defendants contend that they were served 147 days after Moser filed the Complaint.

---

[1] Defendant Evan Sirlin has not appeared in this action, and the docket does not reflect that Sirlin has been served.

3

Defendants contend that, "[u]nder [Rule] 12(b)(5), the case should be dismissed because plaintiff cannot demonstrate good cause for his service of process delay . . . ." (ECF No. 9 at 11; ECF No. 10 at 6).

Moser contends that he demonstrates good cause for the delay in service. Moser contends that after filing the Complaint, he "diligently began looking for process servers . . . but then was gone on a pre-planned trip in June." (ECF No. 13 at 5). Moser contends that he received a call back from a process server, but the individual "was a con man," never completed service, and "cost Moser a lot of time." (*Id.* at 6). Moser contends that "[o]nce he hired a new process server, on September 27, 2019[,] the documents were served within three days on September 30, 2019." (*Id.*).

Rule 12(b)(5) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a plaintiff's complaint for "insufficient service of process." Fed. R. Civ. P. 12(b)(5). "A federal court does not have jurisdiction over a defendant unless the defendant has been properly served under Fed. R. Civ. P. 4." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) (citing *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982)). Rule 4(m) provides, in relevant part:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

To demonstrate good cause, the plaintiff must show that "'(a) the party to be served received actual notice of the lawsuit; (b) the defendant would suffer no prejudice; and (c) plaintiff would be severely prejudiced if his complaint were dismissed.'" *Oyama v. Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001) (quoting *Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir. 1991)). The court further has discretion to grant an extension of time even absent a showing of good cause. *See Efaw v. Williams*, 473 F.3d 1038, 1040 (9th Cir. 2007) ("Rule 4(m), as amended in 1993, *requires* a district court to grant an extension of time when the plaintiff shows good cause for the delay. Additionally, the rule *permits* the district

4

court to grant an extension even in the absence of good cause." (citations omitted)). "In making extension decisions under Rule 4(m), a district court may consider factors 'like a statute of limitations bar, prejudice to the defendant, actual notice of the lawsuit, and eventual service.'" *Id.* at 1041 (quoting *Troxell v. Fedders of N. Am., Inc.*, 160 F.3d 381, 383 (7th Cir. 1998)). "'Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint.'" *Direct Mail Specialists, Inc.*, 840 F.2d at 688 (quoting *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984), *as amended*).

In this case, Moser served the Summons and Complaint 147 days after the he filed the Complaint. Moser stated that he "tried contacting numerous process servers" on the East coast in July and August, but none of them returned Moser's calls. (Moser Decl., ECF No. 13-1 ¶¶ 12-13). Moser stated that, finally, a process server "assured [Moser] that he could perform the service" by August 26, 2019. (*Id.* ¶¶ 13, 15). Moser stated that after the process server charged Moser for the service, he stopped communicating with Moser. (*Id.* ¶¶ 16, 25). Moser stated that on September 27, 2019, he hired another firm that was "able to serve all the documents on all Defendants on September 30, 2019." (*Id.* ¶ 26). Defendants received actual notice of the lawsuit and suffered no prejudice from the delay in service. In addition, "[t]his case was filed . . . two days before the beginning of the statute of limitations on some of the calls." (*Id.* ¶ 27; *see Mann v. Am. Airlines*, 324 F.3d 1088, 1090-91 (9th Cir. 2003) (explaining that the district court did not abuse its discretion in granting an extension of time for service of process where the statute of limitations would bar re-filing of the suit) (citing Fed. R. Civ. P. 4, Advisory Committee Note to 1993 Amendments, subdivision (m) ("Relief may be justified, for example, if the applicable statute of limitations would bar the re-filed action."))). The Court concludes that Moser has demonstrated good cause for the delay in service.

Defendants' Motions to Dismiss the FAC pursuant to Rule 12(b)(5) are denied.

///

///

## III. INSUFFICIENT PROCESS

Defendants move to dismiss the FAC pursuant to Rule 12(b)(4) of the Federal Rules of Civil Procedure on the grounds that the Summons failed to identify the Defendant being served. Defendants contend that "[a] single copy of the original Summons and Complaint was served upon David Roman, but the Summons does not identify the defendant, i.e., it does not indicate whether Mr. Roman is being served as an individual or whether he is being served as an agent of [ ] Lifewatch and/or Medguard." (ECF No. 10 at 11; *see* ECF No. 9 at 29). Defendants contend that "[t]his violation of Fed. R. Civ. P. 4(a) is prejudicial inasmuch as it deprives defendants from knowing who has actually been served and whether and when to respond to the Complaint or FAC." (ECF No. 9 at 29; ECF No. 10 at 11).

Moser contends that "Defendants do not claim or identify any actual prejudice or lack of notice. Mr. Roman . . . admits that all [Defendants] were made well aware of the lawsuit and time to respond." (ECF No. 13 at 4). Moser contends that Defendants' filing of the Motions to Dismiss is sufficient to prevent a technical error from invalidating the process.

Rule 12(b)(4) allows a defendant to challenge the content of the summons by filing a motion to dismiss for "insufficient process." Fed. R. Civ. P. 12(b)(4). Rule 4(a) requires that a summons "name the court and the parties;" "be directed to the defendant;" "state the name and address of the plaintiff's attorney or—if unrepresented—of the plaintiff;" "state the time within which the defendant must appear and defend;" "notify the defendant that a failure to appear and defend will result in a default judgment against the defendant for the relief demanded in the complaint;" "be signed by the clerk;" and "bear the court's seal." Fed. R. Civ. P. 4(a)(1). "Technical defects in a summons do not justify dismissal unless a party is able to demonstrate actual prejudice." *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th Cir. 1994) (citation omitted). However, "neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction without

'substantial compliance with Rule 4.'" *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986) (quoting *Jackson*, 682 F.2d at 1347), *as amended*.

In this case, the Summons provided a section for Moser to fill in the name and address of the Defendant being served. (Ex. 1, Roman Decl., ECF No. 10-2 at 6). Moser did not fill in any Defendant's name or address. The Summons identified "Kenneth Moser" as the Plaintiff, but stated only "See Attachment" for the Defendant. (*Id.*). The Summons did not "name . . . the parties" and was not "directed to the defendant" as required by Rule 4(a)(1)(A)-(B). However, the Summons complied with the other six requirements of Rule 4(a), and the Complaint identifies each Defendant. Defendants filed timely responsive pleadings. *See United Food & Commercial Workers Union*, 736 F.2d at 1382 ("[A] defendant's answer and appearance in an action 'should be enough to prevent any technical error in form from invalidating the process.'" (quoting 4 Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1088, at 155 (Supp. 1983)). The Court finds that Moser "substantial[ly] compli[ed] with Rule 4." *Benny*, 799 F.2d at 492 (quotation omitted). Defendants have not demonstrated that they were prejudiced by the failure of the Summons to identify each Defendant being served. *See United Food & Commercial Workers Union*, 736 F.2d at 1382 ("Even if the summons fails to name all of the defendants . . . dismissal is generally not justified absent a showing of prejudice." (citations omitted)).

Defendants' Motions to Dismiss the FAC pursuant to Rule 12(b)(4) are denied.

## IV. PERSONAL JURISDICTION

Defendant David Roman moves to dismiss the FAC pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure on the ground that the Court lacks personal jurisdiction. Roman contends that he is not subject to either general or specific jurisdiction in California. Roman contends that he has no contact with the State of California and has not purposefully availed himself of the privileges of conducting activities in California. Roman contends that it would be burdensome for him to defend this case in California. Roman contends that Moser's allegations about Roman's role as a corporate officer for Lifewatch and Medguard "are simply too vague and conclusory to suggest that [Roman] has the requisite degree of

participation or control in the activities giving rise to plaintiff's cause of action." (ECF No. 9 at 22).

Moser "does not oppose dismissing Defendant, David Roman from the case on the basis of personal jurisdiction." (ECF No. 14 at 3). Moser contends that he "believe[s] that Mr. Roman directed and/or made calls to the California residents" and "requests that [Roman's] dismissal be without prejudice to amend should facts come to light during discovery that more conclusively prove his actions in directing or making the alleged calls." (*Id.*).

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). In opposing a defendant's Rule 12(b)(2) motion, "the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010), *abrogated on other grounds as recognized by Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017)). "The plaintiff cannot 'simply rest on the bare allegations of its complaint,' but uncontroverted allegations in the complaint must be taken as true." *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)); *see Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) ("[T]he plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." (citing *Data Disc., Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1285 (9th Cir. 1977)). "[W]e may not assume the truth of allegations in a pleading which are contradicted by affidavit . . . but we resolve factual disputes in the plaintiff's favor." *Mavrix Photo, Inc.*, 647 F.3d at 1223 (alteration in original) (quotation and citation omitted); *see Boschetto*, 539 F.3d at 1015 ("Absent an evidentiary hearing, this court 'only inquire[s] into whether [the plaintiff's] pleadings and affidavits make a prima facie

showing of personal jurisdiction.'" (alterations in original) (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 127-28 (9th Cir. 1995)).

"'Federal courts apply state law to determine the bounds of their jurisdiction over a party.'" *Axiom Foods, Inc.*, 874 F.3d at 1067 (quoting *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017)). "California authorizes its courts to exercise jurisdiction 'to the full extent that such exercise comports with due process.'" *Id.* (quoting *Williams*, 851 F.3d at 1020); *see* Cal. Civ. Proc. Code § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."). "Accordingly, 'the jurisdictional analyses under [California] state law and federal due process are the same.'" *Axion Foods, Inc.*, 874 F.3d at 1067 (alteration in original) (quoting *Mavrix Photo, Inc.*, 647 F.3d at 1223).

Absent one of the traditional basis for personal jurisdiction—domicile, presence, or consent—due process requires that a defendant have "certain minimum contacts with [the forum state] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The extent to which a federal court can exercise personal jurisdiction absent presence, domicile, or consent depends on the nature and quality of the Defendant's contacts with the state. "There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant—general jurisdiction and specific jurisdiction." *Boschetto*, 539 F.3d at 1016.

Personal jurisdiction over individual corporate officers may not be based on the court's jurisdiction over the corporation itself. *See Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989) ("Under the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." (citations omitted)). However, the defendant's status as a corporate officer "does not somehow insulate them from jurisdiction." *Calder v. Jones*, 465 U.S. 783, 789-90 (1984). "Each defendant's contacts with the forum state must be assessed individually." *Id.* "For claims sounding in tort, a

9

corporate officer can be subject to jurisdiction based on his own sufficient individual contacts with the forum." *Boon Global Ltd. v. U.S. District Court*, 923 F.3d 643, 652 (9th Cir. 2019); *see Davis*, 885 F.2d at 522 (explaining that the court has personal jurisdiction over corporate officers "as long as the court finds those officers have sufficient minimum contacts with [the forum state]"); *Roberts v. Obelisk*, No. 18cv2898-LAB (BGS), 2019 U.S. Dist. LEXIS 72065, at *12 (S.D. Cal. Apr. 29, 2019) ("Individual [d]efendants cannot take advantage of the so-called 'fiduciary-shield doctrine' if their contacts with California would otherwise give rise to jurisdiction.").

In some circumstances, the court may consider a corporation's contacts with the forum state, or a corporate officer's acts on the corporation's behalf, as a corporate officer's individual contacts with the forum state. A corporation's contacts with the forum state may be "imputed to [the individual defendant]" where the court would "'pierce the corporate veil . . . in liability contexts.'" *Boon Global Ltd.*, 923 F.3d at 652 (quoting *Davis*, 885 F.2d at 520). Courts pierce the corporate veil where the corporation is the agent or "alter ego" of the individual defendant, *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir. 1984), or where the individual defendant had control of, or direct participation in, the alleged activities, *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985). *See Transgo, Inc.*, 768 F.2d at 1021 ("A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." (quotation omitted)). The Court of Appeals for the Ninth Circuit has recognized that "[c]ases which have found personal liability on the part of corporate officers have typically involved instances where the [corporate officer] was the guiding spirit behind the wrongful conduct . . . or the central figure in the challenged corporate activity." *Davis*, 885 F.2d at 523 n. 10 (quotation omitted); *see Aries Music Entm't, Inc. v. Angelica's Record Distribs.*, 506 F. App'x 550, 552 (9th Cir. 2013) (finding a corporate officer's contacts on behalf of a corporation sufficient to subject the officer to personal

jurisdiction because the officer was a "'primary participant'" in the alleged wrongdoing (quoting *Calder*, 465 U.S. at 790)).

### a. General Jurisdiction

"[A] finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities in the world." *Schwarzenegger*, 374 F.3d at 801. The standard for general jurisdiction "is an exacting standard" that requires that a defendant's contacts "'approximate physical presence' in the forum state." *Id.* (quoting *Bancroft & Masters, Inc, v. Augusta Nat'l, Inc*., 223 F.3d 1082, 1086 (9th Cir. 2000)). For general jurisdiction to exist, a defendant's affiliations with the forum state must be "so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "It is the nature and extent of the contacts that determines whether they are 'substantial' or 'continuous and systematic.' Longevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets are among the indicia of such a presence." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1172 (9th Cir. 2006).

In this case, Moser "alleges on information and belief that David Roman is the Vice-President and Chairman of Lifewatch, and President, CEO, and Treasurer of Medguard . . . ." (ECF No. 7 ¶ 49). Moser alleges that "Defendant Roman, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States." (*Id.* ¶ 5). Moser alleges that Roman "formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute a common enterprise." (*Id.* ¶ 39). Moser alleges that Roman "ordered, conducted, or allowed to be ordered the making of the illegal auto-dialed pre-recorded telephone calls to Plaintiff" in California. (*Id.* ¶ 40).

Defendant Roman submitted a Declaration in support of his Motion to Dismiss. (Roman Decl., Ex. B, ECF No. 9-2). Roman stated that he is an officer of Medguard and Lifewatch. (*Id.* ¶¶ 1-2). Roman stated that he "perform[s] his job duties exclusively from

Connecticut." (*Id.* ¶ 3). Roman stated that he has never resided in California, does not maintain an office or own property in California, does not have any bank account in California, does not have a P.O. box in California, does not pay taxes in California, does not have any telephone listing in California, and does not have any agents, servants, or employees in California." (*Id.* ¶¶ 6-13). Roman stated that he "did not make the allegedly violative telephone calls . . . [or] cause allegedly violative telephone calls to be made." (*Id.* ¶ 15).

Moser's allegations regarding Roman's contacts with California are conclusory. *See Mavrix Photo*, 647 F.3d at 1223 ("The plaintiff cannot 'simply rest on the bare allegations of its complaint.'" (quoting S*chwarzenegger*, 374 F.3d at 800)). Moser fails to state facts that support an inference that Roman has "continuous and systematic" contacts with California. *Daimler AG*, 571 U.S. at 127 (quotation omitted). In addition, Roman has presented evidence controverting Moser's allegations that Roman transacts business in California. Although Roman is a corporate officer of Medguard and Lifewatch, Moser fails to state facts that support a reasonable inference that Medguard or Lifewatch is Roman's alter ego or that Roman would be subject to general jurisdiction if the Court imputed Medguard or Lifewatch's contacts with California to Roman. The Court finds that Moser fails to present sufficient evidence to meet the "exacting standard" necessary to establish general jurisdiction. *Schwarzenegger*, 374 F.3d at 801 (citation omitted).

### b. Specific Jurisdiction

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Axiom Foods, Inc.*, 874 F.3d at 1068 (quoting *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014)). "Two principles animate [this] 'defendant-focused' inquiry." *Id.* (quoting *Walden*, 571 U.S. at 284). "First, the relationship between the nonresident defendant, the forum, and the litigation 'must arise out of contacts that the defendant *himself* creates with the forum State.'" *Id.* (quoting *Walden*, 571 U.S. at 284). "Second, the minimum contacts analysis examines 'the defendant's contacts with the forum State itself,

not the defendant's contacts with persons who reside there.'" *Id.* (quoting *Walden*, 571 U.S. at 285). "It follows that 'a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.'" *Id.* (quoting *Walden*, 571 U.S. at 286).

> In order for a court to exercise specific jurisdiction over a nonresident defendant,
>
> (1) the defendant must either "purposefully direct his activities" toward the forum or "purposefully avail[] himself of the privileges of conducting activities in the forum"; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

*Id.* (alteration in original) (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger*, 374 F.3d at 802. "If the plaintiff meets that burden, 'the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable.'" *Axiom Foods, Inc.*, 874 F.3d at 1068-69 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

Under the first prong of the specific jurisdiction analysis in a tort case, the court inquires "whether a defendant 'purposefully direct[s] his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). This "*Calder* effects test" requires that "[t]he defendant must have '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Axiom Foods, Inc.*, 874 F.3d at 1069 (citations omitted). Although "[m]any cases in which the *Calder* effects test is used . . . involve wrongful conduct by the defendant . . . *Calder* [does not] require in purposeful direction cases that all (or even any) jurisdictionally relevant effects have been caused by wrongful acts." *Yahoo! Inc.*, 433 F.3d at 1207-08 (citations omitted). "In any personal jurisdiction case we must evaluate all of

the defendant's contacts with the forum state, whether or not those contacts involve wrongful activity by the defendant." *Id.* at 1207.

In this case, Moser "alleges on information and belief that David Roman is the Vice-President and Chairman of Lifewatch, and President, CEO, and Treasurer of Medguard . . . ." (ECF No. 7 ¶ 49). Moser alleges that "Defendant Roman, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States." (*Id.* ¶ 5). Moser "alleges on information and belief that Defendant Roman knew the calls [to Moser in California] were being made and did nothing, or was willfully and recklessly ignorant of the fact his company or agents were making the calls . . . . This included hiring in the ordering, procuring, and transmission of telemarketing calls including those complained of [in the FAC]" (*Id.* ¶ 49). Moser alleges that Roman "ordered, conducted, or allowed to be ordered the making of illegal auto-dialed pre-recorded telephone calls to the Plaintiff" in California. (*Id.* ¶ 40). Moser alleges that "Roman was put on notice of his illegal activity by demand letters and a plethora of lawsuits filed and served on him prior to these calls being made." (*Id.* ¶ 49).

Roman stated in his Declaration that he "do[es] not ha[ve] personal contacts with California." (Roman Decl., Ex. B, ECF No. 9-2 ¶ 4). Roman stated that he has never resided in California, does not maintain an office or own property in California, does not have any bank account in California, does not have a P.O. box in California, does not pay taxes in California, does not have any telephone listing in California, and does not have any agents, servants, or employees in California." (*Id.* ¶¶ 6-13). Roman stated that he "did not make the allegedly violative telephone calls [or] . . . cause allegedly violative telephone calls to be made." (*Id.* ¶ 15). Roman stated that he did not authorize or have any knowledge of the wrongful acts alleged by Moser. Roman stated that he "do[es] not know the Plaintiff in this lawsuit." (*Id.* ¶ 16).

Moser does not allege that Defendant Roman has any personal contacts with California. Moser alleges that Roman has contacts with California through his actions as a corporate officer for Lifewatch and Medguard. Moser alleges that Roman committed

14

intentional acts by conducting business in California for Lifewatch and Medguard and by ordering or conducting the alleged telephone calls to Moser. Moser's allegation that Roman conducts business in California is conclusory. Roman controverted Moser's allegation that Roman conducted or ordered the calls to Moser in California. The Court cannot conclude that Roman committed any intentional act that was expressly aimed at California. Moser fails to meet his burden to establish that Roman "purposefully direct[s] his activities" towards California. *Axiom Foods, Inc.*, 874 F.3d at 1068 (quotation omitted). The Court concludes that it lacks personal jurisdiction over Defendant Roman.

Defendant Roman's Motion to Dismiss Moser's FAC is granted.

## V. FAILURE TO STATE A CLAIM

Defendants move to dismiss the FAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Moser fails to state a claim upon which relief can be granted. Defendants contend that Moser's claims are barred by the doctrine of res judicata. Defendants contend that "plaintiff's FAC demonstrates on its face that plaintiff asserted or could have asserted the same TCPA claim against defendants in the dozens of small claims matters plaintiff initiated against defendants on 10/22/2015 and 'since 10/22/2015.'" (ECF No. 10 at 9).

Moser contends that "[t]he FAC twice expressly states that the calls at issue in this case are new and were not part of the prior small claims actions with this Defendant." (ECF No. 13 at 7). Moser contends that Defendants "could have simply noticed a small claims filing if any of the calls were overlapping, but they did not because they could not because there is no overlap." (*Id.*).

"The doctrine of claim preclusion (res judicata) provides that a final judgment on the merits bars a subsequent action between the same parties or their privies over the same cause of action." *FDIC v. Alshuler*, 92 F.3d 1503, 1506 (9th Cir. 1996) (citing *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1518 (9th Cir. 1985)). "Claim preclusion bars a party in successive litigation from pursuing claims that 'were raised or could have been raised in [a] prior action.'" *Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1020 (9th

15

Cir. 2019) (alteration in original) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001)); *see United States ex rel. Barajas v. Northrop Corp.*, 147 F.3d 905, 909 (9th Cir. 1998) ("Res judicata bars relitigation of all grounds of recovery that were asserted, or could have been asserted, in a previous action between the parties, where the previous action was resolved on the merits. It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought." (citations omitted)).

"Claim preclusion 'applies when there is (1) an identity of claims; (2) a final judgment on the merits; and (3) an identity or privity between the parties.'" *Cell Therapeutics, Inc. v. Lash Grp., Inc.*, 586 F.3d 1204, 1212 (9th Cir. 2009) (quoting *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002)).

> Whether the two suits involve the same claim or cause of action requires us to look at four criteria, which we do not apply mechanistically: (1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions.

*Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005) (citing *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 921 (9th Cir. 2003)). "The party asserting a claim preclusion argument 'must carry the burden of establishing all necessary elements.'" *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 855 (9th Cir. 2016) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008)).

In this case, Moser bases his TCPA violation claim on "seventeen pre-recorded and auto-dialed telephone calls to Plaintiff . . . from between May 4, 2015, and October 21, 2019." (ECF No. 7 ¶ 9). Moser alleges that he "filed the first of twenty-five small claims actions in the San Diego Superior Court on or about March 5, 2015 . . . for alleged violations of [the TCPA] . . . regarding the calls he received by defendant Life Watch INC." (*Id.* ¶ 27). Moser alleges that Lifewatch "settled the one matter . . . [but] Plaintiff continued

to receive more calls from Defendants even though he had requested to be put on their internal do-not-call list." (*Id.* ¶ 28). Moser alleges that he filed two more small claims actions on October 22, 2015 "concerning calls not alleged in this complaint." (*Id.* ¶ 29). Moser alleges that he "has since filed twenty-two other small claims actions against some or all of the Defendants of which six are on calendar for future trial, fifteen were adjudicated in favor of Plaintiff by default and six of these have been satisfied through collection efforts for calls not alleged in this case." (*Id.* ¶ 32).

To state a claim for violation of the TCPA, a plaintiff need only allege facts from which the court can infer that the defendant made a single call that violated the TCPA's provisions. *See* 47 U.S.C. § 227(b)(3) ("A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation[.]"). Moser alleges facts that, if true, support an inference that Defendants made seventeen calls in violation of the TCPA. Five of the calls alleged by Moser occurred after October 22, 2015, the last date certain that Moser alleges he filed a small claims action. *See Media Rights Techs.*, 922 F.3d at 1021 ("The rule in this circuit, and others, is that 'claim preclusion does not apply to claims that accrue after the filing of the operative complaint' in the first suit." (quoting *Howard v. City of Coos Bay*, 971 F.3d 1032, 1039-40 (9th Cir. 2017)). The Court cannot infer from the facts alleged that Moser could have brought a claim for every call alleged in the FAC in a previous action. Defendants fail to "establish[ ] all necessary elements" of claim preclusion at this stage in the litigation. *Garity*, 828 F.3d at 855 (quotation omitted).

Defendants Lifewatch and Medguard's Motion to Dismiss the FAC is denied.

## VI. CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss Plaintiff's First Amended Complaint filed by Defendant David Roman (ECF No. 9) is granted. The Complaint against Defendant David Roman is dismissed without prejudice. The Motion to Dismiss Plaintiff's First Amended Complaint filed by Defendants Lifewatch, Inc., and Medguard Alert, Inc.

(ECF No. 10), is denied. Any request to file a motion for leave to amend the Complaint must be made within thirty (30) days from the date of this Order and comply with all federal and local rules.

Dated: April 13, 2020

*William Q. Hayes*
Hon. William Q. Hayes
United States District Court